Hollis WATKINS, et al., Plaintiffs,

v.

Kirk FORDICE, Governor of the State of Mississippi, Mike Moore, Attorney General of the State of Mississippi, and Dick Molpus, Secretary of State of the State of Mississippi, Members of the State Board of Election Commissioners; Mississippi Democratic Party Executive Committee; and Mississippi Republican Party Executive Committee, Defendants,

the Standing Joint Legislative Committee on Reapportionment of the Mississippi Legislature; Tim Ford, In His Official Capacity As Speaker Of The Mississippi House Of Representatives; and Ollie Mohamed, In His Official Capacity As President Pro Tempore Of The Mississippi Senate, Intervenors Defendants.

Civ. A. No. J91–0364(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

May 21, 1992.

Carroll Rhodes, Hazlehurst, Miss., John L. Walker, Tomie Green, Jackson, Miss., Wilbur O. Colom, Columbus, Miss., Deborah McDonald, Fayette, Miss., for plaintiffs.

John R. Dunne, Gerald W. Jones, Attys., Voting Section, Civ. Rights Div., Dept. of Justice, Washington, D.C., for amicus curiae U.S.

Jim Warren, Waycaster & Warren, Jackson, Miss., for Miss. Democratic Party Executive Committee.

Michael B. Wallace, Phelps Dunbar, Jackson, Miss., for Miss. Republican Party Executive Committee.

John Reeves, Jackson, Miss., for House Standing Committee.

Daniel E. Lynn, Asst. U.S. Atty., Jackson, Miss., amicus curiae.

Stephen J. Kirchmayr, Giles W. Bryant, Asst. Attys. Gen., Jackson, Miss., for Governor and State of Miss.

Bill Allain, Hubbard T. Saunders, IV, Champ Terney, Jackson, Miss., for intervenors.

William Harold Jones, Petal, Miss., for Standing Committee Miss. House of Representatives and Frances Savage.

J. Dewayne Thomas, Jackson, Miss., Oliver G. Diaz, Jr., Biloxi, Miss., Thomas Upton Reynolds, II, Charleston, Miss., Standing Committee Representatives.

Before BARKSDALE, Circuit Judge, and TOM S. LEE and PICKERING, District Judges.

### OPINION AND ORDER

This opinion and order supplements our orders of April 30 and May 11, 1992, setting the schedule for the 1992 elections to the Mississippi Legislature.

Pursuant to our orders dated August 2, 8, and 30, 1991, the State of Mississippi conducted interim legislative elections in

1991 in accordance with its 1982 reapportionment plan, Miss.Code Ann. § 5-1-1 *et seq.* (1991). *See Watkins v. Mabus,* 771 F.Supp. 789 (S.D.Miss.), *aff'd mem. in part and vacated as moot in part,* —— U.S. ——, 112 S.Ct. 412, 116 L.Ed.2d 433 (1991). In its 1992 session, the Mississippi Legislature passed reapportionment plans for the House of Representatives (House), Miss. J.R. No. 1, and Senate, Miss. J.R. No. 204. Both plans have been precleared by the United States Attorney General (Attorney General) under § 5 of the Voting Rights Act, 42 U.S.C. § 1973c (House on March 30, and Senate on May 8, 1992). The road leading to that result, however, was not an easy one.

The Senate was first reapportioned in the 1992 session by Miss. J.R. No. 202 (initial Senate plan). The plaintiffs supported that plan, as well as the House plan. On February 28, 1992, the plans for the House and Senate were submitted to the Attorney General for preclearance. By letter of March 30, 1992, the Attorney General precleared the House plan, Miss. J.R. No. 1, but interposed an objection to the Senate plan, Miss. J.R. No. 202, "as it affects the area encompassed in Districts 37, 38, and 39 in the southwestern portion of [Mississippi]." Accordingly, by Joint Resolution No. 204, the Legislature amended the initial Senate plan, Miss. J.R. No. 202, by reconstituting districts 37–40. Joint Resolution No. 204 was adopted by the Senate and House on May 4 and 6, respectively; forwarded on May 7 for preclearance; and received and precleared on May 8.

On a parallel track, also with its share of impediments to expeditious progress, this court, pursuant to its August 1991 opinion and orders and through three status conferences in March and April, 1992, moved toward ordering legislative elections in 1992. The United States, as *amicus curiae,* participated in those conferences. Pursuant to our August 2, 1991, order, the parties were to submit, on February 14, 1992, nominees for appointment as a special master pursuant to Fed.R.Civ.P. 53. 771 F.Supp. at 797. And, by order of January 17, 1992, we required the parties to submit proposed criteria for a court-ordered redistricting plan. However, at the request of the parties, because the Legislature was progressing toward the adoption of reapportionment plans, we suspended these requirements. Order of Feb. 20, 1992.

The August 2 order also set the initial status conference for March 2, 1992. 771 F.Supp. at 797. At the time of that conference, the 1992 House and initial Senate plans had been adopted, but had not been reviewed by the Attorney General. The parties discussed what actions they might take in the event the Attorney General interposed an objection; their preferences concerning the dates of elections, including whether party primaries should be held; and the necessity of submitting changes required for those elections to the Attorney General for § 5 preclearance.

The second status conference was held on April 2, 1992, following the Attorney General's March 30 preclearance of the House plan and interposition of an objection to the initial Senate plan. Among the issues the parties raised were whether the elections should be conducted according to a special election format, without party primaries and with the election to be held on November 3, 1992 (the date of the Presidential election), followed by another election, if necessary, three weeks later; the likelihood that a declaratory judgment action would be filed by the State or Legislature in the District Court for the District of Columbia, as authorized by 42 U.S.C. § 1973c; and the scope of the Attorney General's objection to the Senate plan, *i.e.,* whether 49 of the 52 districts were "effectively precleared". The plaintiffs expressed continued support for the initial Senate plan, including for the three districts objected to by the Attorney General.

The third status conference was held on April 28, 1992. The parties discussed, *inter alia,* whether primary elections should be held; the effect of S.Res. No. 14 (April 24, 1992), which authorized the filing of a declaratory judgment action in the District of Columbia and the submission of a request that the Attorney General reconsider his March 30 objection; and the practical

impediments to modifying the three districts that were the subject of the Attorney General's objection, including whether shifting district boundaries would create a "ripple effect". The plaintiffs again emphasized their agreement with the initial Senate plan and their view that their position reflected the views of the majority of the black citizens of Mississippi. At the end of the April 28 status conference, this court announced that elections would be held for the Legislature in 1992, including with party primaries, as confirmed by order dated April 30, 1992.*

As stated, for these elections for a three, rather than the usual four, year term, we adopt the regular election format prescribed by Mississippi law, rather than the special election schedule, advocated by the plaintiffs, which does not include party primaries. This is because, as a section 5 court, we must interfere with state policy only to the extent necessary to remedy statutory or constitutional violations. *Upham v. Seamon,* 456 U.S. 37, 43, 102 S.Ct. 1518, 1522, 71 L.Ed.2d 725 (1982); *White v. Weiser,* 412 U.S. 783, 795, 93 S.Ct. 2348, 2355, 37 L.Ed.2d 335 (1973) ("a federal district court, in the context of legislative reapportionment, should follow the policies and preferences of the State, as expressed in statutory and constitutional provisions ... whenever adherence to state policy does not detract from the requirements of the Federal Constitution"). Adhering to Mississippi's established procedure for

holding legislative elections, including holding party primaries, fulfills this goal better than using the format for special elections. *E.g., Martin v. Mabus,* 700 F.Supp. 327, 343–44 (S.D.Miss.1988) (recognizing Mississippi state policy is expressed in election scheduling laws; declining to adopt proposed remedy of omitting party primaries; holding that court "should follow the state policy of using party primaries in judicial elections"). Simply put, the voters in Mississippi in 1992 should, indeed will, have the opportunity to elect members to their legislature, by regular election procedures, for a three-year term of office, to supplement the interim elections held in 1991, the year the regular elections were required to be held by Mississippi law.

As discussed, following the final status conference, the Legislature adopted a Senate plan that has been precleared. This renders moot most of the pending motions. Therefore, having considered the arguments of counsel at the status conferences, together with the motions and supporting memoranda submitted since our August, 1991, opinion and orders,

IT IS ORDERED:

1. That elections be held in 1992 for the Mississippi House of Representatives and Senate, utilizing the precleared 1992 reapportionment plans, Miss.J.R. Nos. 1 and 204;

2. That the persons so elected will hold office for a three-year term, commencing

---

* The announcement was, in part:

> [T]his *is* a legislative matter, and the legislature is still in session and will be in session, we are told, until May the 10th of this year.
> ... If the legislature does not have a new plan that we are satisfied is probably going to be precleared.... then, on or about the date [it] adjourns, we're going to order into effect utilization of the plans adopted by the ... House and the Senate. The House [plan] has been precleared. The Senate [plan] has not.
> We're going to order those plans into effect for interim elections to be held this year and thereafter until there are precleared plans. Those elections will be held pursuant to State law, including party primaries, and they will be held according to the schedules set by State law with the possible, and I repeat possible, exception of the qualifying deadline[ ]. And we will change the qualifying deadline[ ] only

> if absolutely necessary. So, our hope is to have these elections held as closely as possible to the dates pursuant to schedule set by State law....
> Again, the Mississippi Legislature is still in session. The Court agonized over whether to make this sort of early announcement. On the one hand or on the other, we do not want to appear that we're holding any sort of hammer over the head of the legislature. That is a sovereign body and elected by the people of the State of Mississippi. We felt that we should advise of our intentions, and, then, the legislature can react as it sees fit.
> So, the next order coming out of this Court, other than the order that we'll issue in the next few days on expert witness fees, will be on or about the date that the legislature adjourns. We will handle these other pending motions as need be....

when the Legislature convenes for its regular session on January 5, 1993;

3. That the elections be held pursuant to the laws of the State of Mississippi, according to the following schedule derived from Mississippi law:

a. qualifying deadline—June 5, 1992, *see* Miss.Code Ann. § 23–15–299;

b. party primary—August 4, 1992, with the second primary to be held three weeks thereafter on August 25, 1992, *see* Miss. Code Ann. § 23–15–191;

c. general election—November 3, 1992, to coincide with the national Presidential and Congressional election, *see, e.g.,* 3 U.S.C. § 1, Miss. Const. § 140, and Miss. Code Ann. § 23–15–193;

4. That because the preclearance of both plans moots most of the pending motions, the movants are promptly to notify the court as to those motions they desire to be considered and to withdraw the remaining motions; and

5. That the parties are to promptly file any other motions required for the final disposition of this action.

SO ORDERED.

