**Hollis WATKINS, et al., Individually and on behalf of All Others Similarly Situated, Plaintiffs,**

**v.**

**Kirk FORDICE, Governor of Mississippi, et al., the Standing Joint Legislative Committee on Reapportionment of the Mississippi Legislature; Tim Ford, In His Official Capacity As Speaker of the Mississippi House of Representatives; and Ollie Mohamed, In His Official Capacity As President Pro Tempore of The Mississippi Senate, Defendants–Intervenors.**

Civ. A. No. J91–0364(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

Oct. 29, 1992.

Carroll Rhodes, Hazlehurst, MS, John L. Walker, Tomie Green, Jackson, MS, Wilbur O. Colom, Columbus, MS, Deborah McDonald, Fayette, MS, for plaintiffs.

John R. Dunne, Gerald W. Jones, Voting Section, Civ. Rights Div., Dept. of Justice, Washington, DC, for amicus curiae, U.S.

Jim Warren, Waycaster & Warren, Jackson, MS, for Miss. Democratic Party Executive Committee.

Michael B. Wallace, Phelps Dunbar, Jackson, MS, for Miss. Republican Party Executive Committee.

John Reeves, Jackson, MS, for House Standing Committee.

Daniel E. Lynn, Asst. U.S. Atty., Jackson, MS, amicus curiae.

Stephen J. Kirchmayr, Giles W. Bryant, Asst. Attys. Gen., Jackson, MS, for Governor and State of Miss.

Bill Allain, Hubbard T. Saunders, IV, Champ Terney, Jackson, MS, for defendants-intervenors.

Before BARKSDALE, Circuit Judge, and TOM S. LEE and PICKERING, District Judges.

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiffs to dissolve the three-judge court previously convened in this

Voting Rights Act case at the request of plaintiffs, and to remand case to managing district judge for an award of attorneys' fees and expenses. Plaintiffs have also moved for an award of attorneys' fees and litigation expenses and by their motion, they further seek discovery and an evidentiary hearing on issues relating to the prevailing market rates for attorney services, the necessity of enhancement in civil rights cases and the market difference between contingency and non-contingency fee cases. The State defendants [1] and the Joint Committee defendants-intervenors [2] have responded in opposition to plaintiffs' motion to dissolve the three-judge court and have separately responded, opposing plaintiffs' motion for an award of attorneys' fees and expenses.

■ The first matter which the court must address is the question whether it is proper at this juncture to dissolve the three-judge court.[3] Plaintiffs seek the dissolution of the three-judge court and a remand of the case to the managing district judge for resolution of the pending attorneys' fees motion contending that as the statutory function of the three-judge court has been fulfilled, there remains no reason nor justification for the three-judge court's remaining convened. Defendants, on the other hand, maintain that the three-judge court should remain convened, for the reason that there remain motions pending in this cause for resolution by the three-judge court and for the further reason that it may become necessary at some time prior to the scheduled November 3, 1992 elections for the three-judge court to modify, clarify or interpret the court's May 21, 1992 opinion and order, 791 F.Supp. 646. While the court is of the opinion that the

three-judge court need not remain convened during the pendency of the elections due to a concededly remote possibility that there might arise a need for a modification of the court's order, the court is nevertheless of the view that it would be inappropriate to dissolve the three-judge court until such time as there has been a final resolution or disposition of each of the motions that has been filed in this action.

By order dated May 21, 1992, the court ordered "[t]hat because the preclearance of both [House and Senate] plans moots most of the pending motions, the movants are promptly to notify the court as to those motions they desire to be considered and to withdraw the remaining motions." At the time of the court's order in that regard, there were a number of motions by plaintiffs pending, including, *inter alia*, a motion for class certification, a motion to withdraw their motion for class certification, a motion for leave to file a supplemental or second amendment to their complaint, and a "motion for preliminary and permanent injunctions and for injunctive and declaratory relief setting aside results and certifications of 1991 and March 1992 legislative elections and scheduling legislative elections for late 1992." Though plaintiffs failed to comply with the court's order requiring "prompt" notification of the plaintiffs' position regarding their motions, plaintiffs now advise in their rebuttal brief that their motions have either been withdrawn and/or are moot and thus do not need to be withdrawn. To reiterate, the court ordered that the parties "notify the court as to those motions they desire to be considered and to withdraw the remaining motions." Plaintiffs have not complied with the court's order and, in order to avoid

1. The State defendants include Kirk Fordice, Governor of the State of Mississippi, Mike Moore, Attorney General of the State of Mississippi, and Dick Molpus, Secretary of State of the State of Mississippi, in their respective official capacities and as members of the State Board of Election Commissioners.

2. The Joint Committee defendants are the Standing Joint Legislative Committee on Reapportionment of the Mississippi Legislature; Tim Ford in his official capacity as Speaker of the Mississippi House of Representatives; and Ollie

Mohamed in his official capacity as President Pro Tempore of the Mississippi Senate.

3. The facts and procedural history of this case are fully set forth in the court's prior opinions and orders, *see Watkins v. Mabus,* 771 F.Supp. 789 (S.D.Miss.), *aff'd mem. in part and vacated in part as moot,* —— U.S. ——, 112 S.Ct. 412, 116 L.Ed.2d 433 (1991), and *Watkins v. Fordice,* 791 F.Supp. 646 (S.D.Miss.1992), and need not be repeated here.

any future confusion, the three-judge court will remain convened until such time as plaintiffs have formally complied with the court's order. Therefore, plaintiffs' motion to dissolve the three-judge court will at this time be denied.

While a single judge has the authority to rule on plaintiffs' motion for an award of attorneys' fees and expenses, since this three-judge court remains convened, it may properly address and resolve that motion. *See Connor v. Winter*, 519 F.Supp. 1337 (S.D.Miss.1981). Turning now to that motion, the court, based on the memoranda and information provided, makes the following findings and conclusions.

Plaintiffs' present motion asserts that as prevailing parties in this litigation, they are entitled to recover their attorneys' fees and expenses from defendants. Defendants oppose plaintiffs' motion for attorneys' fees and expenses contending that plaintiffs are not prevailing parties within the meaning of the applicable attorneys' fee statutes. They assert alternatively that if the court should conclude that plaintiffs are indeed prevailing parties, then the court should award an amount substantially less than that requested by plaintiffs since the hours claimed by plaintiffs' attorneys are unreasonable and excessive, their hourly rates are unreasonably high, and their expenses are not properly compensable and/or are unreasonable and excessive.

## PREVAILING PARTIES

Plaintiffs' entitlement to an award of attorneys' fees is determined by reference to 42 U.S.C. § 1988 and 42 U.S.C. § 1973*l*(e), which provide for an award of reasonable attorneys' fees to prevailing plaintiffs in civil rights litigation and Voting Rights Act lawsuits.[4] In *Texas State Teachers Association v. Garland Indepen-*

*dent School District*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), the Supreme Court attempted to clarify the proper standard to be used in determining whether a party has "prevailed" such that the party is eligible for an award of attorneys' fees. A prevailing party, the Court stated, "must be one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation," 489 U.S. at 791, 109 S.Ct. at 1492, so that "there is a resolution of the dispute which changes the legal relationship between [plaintiffs] and defendant[s]," *id.* at 792, 109 S.Ct. at 1493. As is pertinent to the case at bar, the Fifth Circuit has explained:

[I]n the absence of a judgment, a party may be entitled to fees as a prevailing party "if its ends are accomplished as a result of the litigation." *Williams v. Leatherbury*, 672 F.2d 549, 550 (5th Cir. 1982). Thus, a plaintiff must establish two elements: (1) that the goal of the law suit was achieved, and (2) that the suit itself caused the defendant to remedy the discrimination. *Savidge [v. Fincannon]*, 836 F.2d [898,] at 904–05 [ (5th Cir.1988) ].

A plaintiff who successfully shows both these elements has made a prima facie case that it is a prevailing party entitled to attorney's fees. The burden of proof then shifts to the defendant, who can challenge the entitlement only by showing that its conduct was a "wholly gratuitous response to a lawsuit that lacked colorable merit." *Hennigan v. Ouachita Parish School Bd.*, 749 F.2d 1148, 1153 (5th Cir.1985).

*Associated Builders & Contractors, Inc. v. Orleans Parish School*, 919 F.2d 374, 378 (5th Cir.1990).

**4.** Section 1988 provides, as is pertinent here: In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Section 1973*l*(e) similarly provides: In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

In this case, there is little question but that the plaintiffs' goal was achieved, as the Mississippi Legislature ultimately passed a redistricting plan which met the criteria demanded by plaintiffs, most significantly the creation of the maximum possible number of majority black legislative districts. It is the second of the elements described by the Fifth Circuit, though, which gives the court pause. The court is not persuaded that plaintiffs' lawsuit prompted the Mississippi Legislature's having devised and passed *a* redistricting plan in its 1992 regular session, as that eventuality was inevitable under Mississippi law.[5] Additionally, it is noteworthy that plaintiffs were not successful in securing relief from this court. Plaintiffs came before the court seeking, primarily, an order enjoining the 1991 legislative elections.[6] Not only was their request for that injunctive relief denied, but the court ordered, over plaintiffs' strenuous objection, that interim elections proceed under the 1982 legislative apportionment plan. This court denied a motion by plaintiffs for a stay, and on appeal by plaintiffs, the United States Supreme Court similarly denied their stay request and summarily affirmed this court's ruling that elections be held under the 1982 plan. Moreover, this court rejected plaintiffs' contention that the law required apportionment which resulted in the creation of the maximum number of electable black majority districts. *Watkins v. Mabus,* 771 F.Supp. 789, 806 (S.D.Miss.1991).[7] Yet in spite of the court's opinion in that regard, the legislature passed apportionment plans which satisfied plaintiffs' objectives. It could certainly be reasonably contended that the legislature's action was, in fact, a "gratuitous response" to plaintiffs' lawsuit, since the court had given no indication that plaintiffs would secure such wholesale relief in this judicial forum, and in fact, had forecast little chance of plaintiffs' securing a court-ordered plan which satisfied their agenda.[8] Nevertheless, and though it is in the court's opinion a close question, the court will conclude that plaintiffs were the prevailing party since it is likely the case that plaintiffs, and this lawsuit, played a motivating role in shaping the particular apportionment plans which the legislature adopted. Plaintiffs are, therefore, entitled to an award of attorneys' fees and expenses and it devolves upon this court to determine an appropriate compensatory award.

## PLAINTIFFS' REQUEST

In arriving at an appropriate fee, the court's first task is to ascertain the number of hours reasonably expended on the litigation, following which the court must deter-

---

5. Article 13, Section 254 of the Mississippi Constitution mandates legislative redistricting during the regular legislative session in the second year following the decennial census, failing which the governor must reconvene the legislature in a special apportionment session during which it would be "the mandatory duty of the legislature to adopt a joint resolution of apportionment." Should that effort fail, an apportionment commission would be convened, whose sole function would be to apportion the state into legislative districts.

6. Plaintiffs' suit included allegations that the 1982 apportionment schemes for the Mississippi House of Representatives and Mississippi Senate were unconstitutionally malapportioned and that the 1991 House and Senate apportionment plans could not be implemented as they had not been administratively or judicially precleared. However, those were hardly matters of contention between the parties. These facts were conceded by defendants from the outset, so it can not realistically be said that plaintiffs "won" these points.

7. The court stated: "It is doubtful whether [*Thornburg v.*] *Gingles* [478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986)] held, as plaintiffs suggest, that the amended Voting Rights Act § 2 requires that states go beyond the requirement of non-discrimination in order to create as many non-white majority districts as possible." *Watkins,* 771 F.Supp. at 806. The court further observed that "[w]hile the creation of 40 black majority districts may be an acceptable legislative goal, even if it means creating a significant number of non-compact districts, it is not a goal that this court must, or necessarily should, implement as interim relief." *Id.*

8. Plaintiffs characterize defendants' having acceded to plaintiffs' demands as an "abdication [by defendants] of their position that plaintiffs were not entitled to the maximum number of electable black majority districts." It does not follow, however, from the mere fact that defendants ultimately succumbed to plaintiffs' demands that defendants conceded plaintiffs' *entitlement* to the relief plaintiffs requested.

mine a reasonable hourly rate for each of plaintiffs' attorneys. By multiplying these two figures, this court arrives at the "lodestar," an amount which "normally provides 'reasonable' attorney's fees within the meaning of" the fee-shifting statutes at issue. *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). The following represents the fee requests of the various attorneys who represented plaintiffs in this litigation:

| Attorney | No. of Hours | Hourly Rate | Totals |
| --- | --- | --- | --- |
| Carroll Rhodes | 1694.75 hrs. | $160.00 | $271,160.00[9] |
| Deborah McDonald | 441.68 hrs. | 135.00 | 59,626.80 |
| John L. Walker | 108.70 hrs. | 160.00 | 17,392.00 |
| Wilbur O. Colom | 146.47 hrs. | 125.00 | 18,308.75 |
| Mike Sayer | 229.50 hrs. | 95.00 | 21,802.50 |
| Johnny Parker | 99.50 hrs. | 135.00 | 13,432.50 |
| Tomie Green | 8.20 hrs. | 135.00 | 1,107.00 |
| **LODESTAR** | | | **$402,929.55** |

Plaintiffs seek a one hundred percent contingency enhancement of the lodestar for total attorneys' fees of $805,659.10. Additionally, plaintiffs request costs and out-of-pocket expenses in the amount of **$61,279.29** as follows:

| Attorney | Totals |
| --- | --- |
| Carroll Rhodes | $53,874.91 |
| Deborah McDonald | 2,758.90 |
| John L. Walker | 2,704.48 |
| Wilbur O. Colom | 1,933.00 |
| **Total** | **$61,279.29** |

Thus, plaintiffs seek an award of fees and expenses in the total amount of $866,938.39. After reviewing the memoranda submitted by the parties in connection with plaintiffs' motion, together with the documentary submissions both in support of and in opposition to plaintiffs' request, including a thorough review and analysis of plaintiffs' attorneys' time submissions, the court concludes that plaintiffs are entitled to an award of fees and expenses in the amount of $198,688.23. While this amount is obviously substantially less than that sought by plaintiffs, it is, in the court's view, a reasonable award of attorneys' fees and expenses for plaintiffs' attorneys' work in this case.

### ATTORNEYS' FEES

 The court must review attorney time records and affidavits to determine the number of hours reasonably expended "with an eye toward disallowing those hours which are excessive, unnecessary, duplicative or insufficiently documented." *Beamon v. City of Ridgeland,* 666 F.Supp. 937, 941 (S.D.Miss.1987) (citing *Sims v. Jefferson Downs Racing Ass'n,* 778 F.2d 1068, 1084 (5th Cir.1985)). As indicated above, attorney Carroll Rhodes seeks compensation for 1694.75 hours for his services in this case. A careful analysis of his time submissions reveals that many of those hours were expended on services which are not properly compensable and/or which were excessive in view of the task being performed. The court recognizes that much of Mr. Rhodes' time prior to the commencement of litigation for which compensation is sought was expended on functions legitimately and reasonably related to the advancement of the litigation as, for example, time spent gathering information, defining plaintiffs' criteria and drafting proposed apportionment plans. However, prior to the filing of the lawsuit, Mr. Rhodes spent 257.75 hours on lobbying-related activities and in connection with the Justice Department's Section 5 review of

---

**9.** Mr. Rhodes states that he seeks compensation for 1664.75 hours. The time included in Mr. Rhodes' records, however, reveals a total of 1694.75 hours, for all of which he presumably seeks to be paid.

Mississippi's legislative submission. The court is of the opinion that this time is not properly compensable. The fee-shifting statutes which authorize an award of attorneys' fees are concerned with attorneys' fees in connection with an "action or proceeding to enforce" the subject rights. Where an attorney's work is "both useful and of a type ordinarily necessary to advance the civil rights [and/or Voting Rights Act] litigation," *Webb v. Board of Education of Dyer County*, 471 U.S. 234, 243, 105 S.Ct. 1923, 1929, 85 L.Ed.2d 233 (1985), legal fees for the time expended on that work are recoverable, even though that time is not necessarily directly spent on the litigation. Here, however, plaintiffs' attorneys' legislative lobbying work and their work relating to the Justice Department's review of the State's Section 5 submission were not "necessary" to advance the litigation. *See City of Leroy v. Houston*, 831 F.2d 576, 582–83 (5th Cir. 1987), *cert. denied*, 486 U.S. 1008, 108 S.Ct. 1735, 100 L.Ed.2d 199 (1988); *Arriola v. Harville*, 781 F.2d 506, 511 (5th Cir.), *cert. denied*, 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 38 (1986). Indeed, as Mr. Rhodes' time records indicate, as late as June 22, 1991, after months of lobbying and working with the legislature and after participating in the Section 5 review, and only one week prior to actually filing the complaint in this cause, plaintiffs had not made the final determination to institute litigation.[10] The time so requested will be disallowed.

■Even after the court's disallowance of Mr. Rhodes' time spent in connection with lobbying and Section 5 preclearance work, there remain 173.75 pre-litigation hours for which Mr. Rhodes seeks compensation. The court is of the opinion that this is an excessive amount of time for the performance of the tasks reasonably necessary to the commencement of this action. Accordingly, the court will reduce by fifty percent the number of prelitigation hours for which compensation will be awarded.

■ Mr. Rhodes' time submissions further reflect 230 hours of "travel time," yet there is no indication to or from where Mr. Rhodes was travelling during this time.[11] These hours will be disallowed. The court will also disallow 4 hours expended by Mr. Rhodes in press conferences. There is simply no basis for causing compensation for such press conferences to be borne by defendants.

■ It has been consistently recognized that the losing litigant should neither expect nor be required to pay an attorney's rate for services which are clerical in nature and could be performed by non-lawyers. *See, e.g., Beamon*, 666 F.Supp. at 941. As his time records demonstrate, Mr. Rhodes expended at least 23.5 hours performing tasks which could easily have been accomplished by clerical personnel, such as computing population deviations, color coding precinct maps and filing court documents. These hours will be compensated, but at the hourly rate of $40, a rate which the court considers to be reasonable for such clerical services.

■ An additional 67.5 hours will be deducted from the time claimed by Mr.

10. An entry in Mr. Rhodes' time submissions on that *date reflects a conference, the subject of* which was "strategy on filing lawsuit and whether to file."

11. The only entry in Mr. Rhodes' submission which reflects his travel destination is a six-hour travel time entry which indicates that this pre-litigation travel was to Greenville, Mississippi for the purpose of attending a public hearing relating to the legislature's redistricting efforts. As Mr. Rhodes' time in connection with that hearing has been disallowed by the court, then certainly his travel to that hearing would not be compensable. The remaining 224 hours of travel time is derived from 112 separate entries of two-hour travel time each. Many of those entries were, like the six-hour travel time entry, expended in relation to activities which are not compensable in any event. However, not even one of these 112 entries reflects to or from where Mr. Rhodes was traveling. The court initially deduced that Mr. Rhodes was seeking to recover for his time spent in travel from his law office in Hazelhurst, Mississippi to Jackson, Mississippi. However, in a supplemental affidavit provided by Mr. Rhodes in response to defendants' opposition to plaintiffs' motion, Mr. Rhodes states, "I did not include in my itemized bill for services rendered in the above captioned case any time I spent commuting to and from my office." The court, it seems, was incorrect in its deduction, and is thus at a complete loss to divine where or why Mr. Rhodes was traveling during these 224 hours.

Rhodes as his time records reflect substantially duplicative entries from August 5, 1991 through August 15, 1991. Page 62 of his submission includes 67.5 hours claimed to have been expended during those dates while pages 63 and 64 reveal an additional 81.75 hours spent on virtually those same tasks during those dates. This is obviously an error by Mr. Rhodes as he could not possibly have worked the number of hours claimed.[12]

██ In addition to the foregoing, a comprehensive review of all plaintiffs' attorneys' time submissions reveals in two areas duplication of effort and/or excessive number of hours for which compensation is sought. More specifically, six of plaintiffs' attorneys spent, collectively, 78.3 hours in their efforts relating to the Joint Committee defendants-intervenors' motion to intervene and attempting to set aside the court's order allowing intervention.[13] And, five of plaintiffs' attorneys expended 272.5 hours[14] in efforts in attempting to secure relief from this court's order of August 9, 1991.[15] Not only were plaintiffs unsuccessful in their efforts to prevent intervention and to secure a stay of this court's orders, or any substantive relief for that matter, but the time they spent in connection with these matters was, in the court's view, if not substantially duplicative, certainly grossly excessive in light of the nature of their tasks. For that reason, the court concludes that the number of hours of each attorney for time spent on these matters should be reduced by fifty percent.

██ As was the case with Mr. Rhodes, Deborah McDonald's time records reveal that she seeks compensation for a number of pre-litigation hours for lobbying and Section 5 review activities. The 26.25 hours so requested will be disallowed by the court. In addition, Ms. McDonald seeks compensation for 5 hours of clerical work, which the court will compensate at the rate of $40 per hour. Thirty hours for which McDonald requests an attorney's fee were spent in travel.[16] It has been held that travel time may be compensated at a rate which is less than the reasonable hourly attorneys' fee rate, see Martin v. Mabus, 734 F.Supp. 1216, 1227 (S.D.Miss.1990); Beamon, 666 F.Supp. at 941, and the court will order that compensation for travel time be awarded at one-half of the hourly rate allowed for Ms. McDonald. The court will similarly reduce the hourly fee awarded for Mr. Colom's 29.5 travel hours and Mr. Sayer's 23.5 travel hours by one-half.

██ Except as noted above, the hours claimed by each of plaintiffs' attorneys will be allowed, and at this stage, the court is called upon to set a "reasonable" hourly rate to be awarded for each of these attorneys' services. It is with regard to the court's setting of a reasonable hourly rate and plaintiffs' alleged entitlement to an "enhancement" of that rate that plaintiffs seek discovery and an evidentiary hearing. Specifically, plaintiffs request that they be granted leave to conduct discovery on: (1)

---

**12.** While Mr. Rhodes does claim to have worked on this case close to 24 hours a day on a number of occasions during this litigation, it would have been impossible for him to have worked the number of hours reflected on his time sheets for this period of time during August 1991 as demonstrated by the following.

| Date | No. of Hours Claimed |
|------|----------------------|
| 8/6/91 | 28 hours |
| 8/8/91 | 34 hours |
| 8/9/91 | 31 hours |
| 8/12/91 | 34 hours |

**13.** These attorneys' time sheets demonstrate the following time was spent by each in relation to this matter:

| | |
|---|---|
| Rhodes | 20.0 hours |
| Sayer | 12.0 hours |
| Parker | 23.0 hours |
| Green | 8.0 hours |
| Walker | 5.2 hours |
| McDonald | 10.1 hours |

**14.** These hours are as follows:

| | |
|---|---|
| Rhodes | 177.5 hours |
| Sayer | 15.0 hours |
| Parker | 9.5 hours |
| Colom | 6.0 hours |
| McDonald | 64.5 hours |

**15.** These figures represent conservative estimates by the court of the time so utilized by plaintiffs' attorneys. In certain instances, it is difficult to determine whether time entries are related to these matters and in cases of doubt, the court has resolved that doubt in plaintiffs' favor.

**16.** She has not in each instance separately denominated such time in her records as "travel time," though it does appear that the time computed by the court was in fact travel time.

the prevailing market rate for attorney fees in non-contingency complex civil cases and complex contingency civil cases; (2) the necessity of enhancement in civil rights cases; and (3) the market difference between contingency and non-contingency fee cases. The court is of the opinion that such discovery would serve no useful purpose. To the contrary, to permit such discovery would operate only to further delay payment to plaintiffs' attorneys and to needlessly "run up the bill" for their services. The parties have provided a wealth of material in support of their respective positions on plaintiffs' claims for attorneys' fees and to permit discovery on these matters is simply unnecessary. Indeed, the Supreme Court has cautioned that a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). To grant plaintiffs' request would encourage just that result. The request for discovery will be denied.[17]

■ In support of their claims for hourly rates ranging from $95 to $160, plaintiffs have submitted affidavits of a number of attorneys to demonstrate the prevailing hourly rates charged by attorneys in the Jackson area. The affidavits of these attorneys reflect hourly rates of $150 to $200 for attorneys with over ten years' experi-

ence, and of $100 to $150 for those with four to ten years' experience.[18] In response to plaintiffs' submissions, defendants have provided the affidavit of Alan M. Purdie, Special Assistant Attorney General of the State of Mississippi, who states that the usual current hourly rate paid by the State for legal services to private instate counsel is $90. Defendants have additionally furnished affidavits from attorneys which reflect an hourly rate of $100 being charged in civil rights litigation by one Jackson attorney with eight years' experience and expertise in the field, and by another with over fifteen years' experience and expertise in the field.[19] Finally, defendants have advised that the hourly rate that is being charged the State by counsel for the Joint Committee defendants-intervenors in the case *sub judice* by its experienced attorneys is $95. The court has considered all of this evidence in arriving at its conclusion that the following represent "reasonable" hourly rates for each of plaintiffs' attorneys:

| Attorney | Rate |
| --- | --- |
| Carroll Rhodes | $110.00 |
| John Walker | 110.00 |
| Deborah McDonald | 95.00 |
| Michael Sayer | 95.00 |
| Wilbur Colom | 95.00 |
| Johnny Parker | 95.00 |
| Tomie Green | 95.00 |

17. As indicated *infra* at 416–17, discovery relating to the necessity of a "contingency enhancement" would be to no avail, since recent Supreme Court precedent establishes that such an enhancement is not available in any event.

18. David Watkins of the Jackson, Mississippi law firm, Brunini, Grahtham, Grower & Hewes, states that the market rate for attorneys in the Jackson area with 10 to 14 years of legal experience who handle complex non-contingency civil cases is $150 per hour. Alveno N. Castilla of the Watkins, Ludlam & Stennis law firm states that the market rates for attorneys with 10 to 14 years' legal experience who handle complex non-contingency civil cases are $165 to $175 per hour, and the rates for those with 5 to 10 years' experience range from $125 to $150 per hour. In 1989, A. Spencer Gilbert, with the law firm, Wise, Carter, Child & Caraway, provided an affidavit in another Mississippi Voting Rights Act case, *Martin v. Mabus,* in which he opined that lawyers with over 10 years' experience and with expertise in their field would normally charge $150 per hour, but that the rate could be

as high as $200 per hour. Attorneys with 8 to 10 years' experience and with expertise in their field would charge between $125 and $145 per hour, and those with 4 to 7 years' experience would charge between $100 and $120 for their work. In that same case, J. Brad Pigott of Watkins, Ludlam & Stennis stated that the normally charged hourly rate for attorneys with 6 to 10 years experience is $120, and is $150 for those with over 10 years of experience. Those affidavits have been provided by plaintiffs in this case, as well.

19. Dennis Horn, an attorney with over 15 years' experience, submitted in a 1991 school desegregation case, *Wallace v. The Natchez–Adams School District,* No. W89–0134(B) (S.D.Miss), an affidavit for attorney's fees in which he requested compensation at the rate of "$100 per hour, the market rate." In 1992, Matthew Moore, an attorney with 8 years experience, requested $100 an hour for his work in a § 1983 case involving First Amendment issues, *Lakeland Lounge of Jackson, Inc. v. City of Jackson,* No. J92–0123(B)(C) (S.D.Miss.1992).

In arriving at these figures, the court has considered the evidence submitted by the parties relating to the local rates of attorneys, and has taken into account the experience and expertise of each attorney, the nature and complexity of the case, including the level of skill and expertise required by the case, and the demands imposed on the attorneys by the case.[20]

Plaintiffs assert that "[i]n contingency fee cases, such as this, the lodestar (which is the reasonable hourly rate multiplied by the reasonable number of hours) is enhanced 100–300% to compensate for the risk of not succeeding, the delay in payment, exceptional results, undesirability of the case, preclusion of other employment, etc." Plaintiffs urge that each of these factors is present in the case at bar, and they are therefore entitled to a "market rate contingency enhancement" of one hundred percent. The court must conclude otherwise. Most of the factors cited by plaintiffs are not "enhancement" factors at all, but rather are factors that are taken into account in determining the reasonableness of the hours expended and the attorneys' hourly rates. *See Hensley*, 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9; *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). That is, they are considerations in *setting* the lodestar, not in *enhancing* the lodestar. Further, though it was until recently widely accepted that the risk of non-compensation could provide a basis for applying a multiplier or enhancement to the lodestar, the Supreme Court has now explicitly rejected

that view, holding that "enhancement for contingency is not permitted under ... fee-shifting statutes" such as that at issue here. *City of Burlington v. Dague*, —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).[21] Plaintiffs respond to *Dague*'s clear preclusion of a contingency enhancement by arguing that they are not seeking an enhancement of the "lodestar," but rather are seeking an enhancement of their hourly rates, a result which they contend is consistent with *Dague*. In *Dague*, the Court explained:

> [A]n enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar. The risk of loss in a particular case (and, therefore, the attorney's contingent risk) is the product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits. The second factor, however, is ordinarily reflected in the lodestar—either in the higher numbers of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so. *Blum, supra.* Taking account of it again through lodestar enhancement amounts to double-counting. [*Pennsylvania v. Delaware Valley Citizens' Council*] *Delaware Valley II*, 483 U.S. [711], at 727–727 [107 S.Ct. 3078, 3087, 97 L.Ed.2d 585 (1987)] (plurality opinion).

At ——, 112 S.Ct. at 2641. Plaintiffs suggest that even though the Supreme Court rejected the notion of enhancing a lodestar based on the contingency factor, this pas-

**20.** Evidence submitted by *plaintiffs* in opposition to defendants' response to their motion confirms, in the court's opinion, that the hourly rates at which the court has arrived for plaintiffs' attorneys' services are reasonable. The exhibits plaintiffs have furnished show the following. As of June 1991, John Price of the law firm, Thomas, Price, Alston, Jones & Davis, charged the State at the rate of $125 per hour. The time of Barry Zirulnik and Cynthia Sarthou of that firm was charged at the rates of $100 and $80, respectively. The firm of Bennett, Lotterhos, Sulser & Wilson, P.A. billed the State at the rate of $100 per hour in 1991. And for services rendered for the State in a Voting Rights Act case relating to judicial redistricting, the Washington, D.C. law firm of Dickstein, Shapiro & Morin, during 1988 charged the State

hourly rates ranging from a low of at least $70 to a high of $125.

**21.** Though the issue in *Dague* was whether, under the fee-shifting provisions of the Solid Waste Disposal Act, 42 U.S.C. § 6972(e), or the Federal Water Pollution Control Act (Clean Water Act), 33 U.S.C. § 1365(d), a court may enhance a fee award to an amount above the lodestar to reflect the risk of non-payment, the Court recognized that the language of the statutes under consideration was similar to that of many other federal fee-shifting statutes, including Section 1988, and noted that "our case law construing what is a 'reasonable' fee applies uniformly to all of them." *Dague*, —— U.S. at ——, 112 S.Ct. at 2641.

sage reflects the Supreme Court's approval of awarding an enhanced hourly rate in contingency cases in arriving at the lodestar. This court believes plaintiffs have misconstrued the point of the passage. The Supreme Court, in this court's view, merely observed that some contingency cases by their nature may require the services of attorneys with greater skill and experience who, by reason of that skill and experience, may command higher hourly rates than less skilled or experienced attorneys. That is, it is not the "contingent" nature of the case, *per se*, which determines the allowable rate, but rather the skill and experience of the attorney performing the services. In the case at bar, the court has taken into account each of plaintiffs' attorney's skill and experience in arriving at a reasonable hourly rate for his/her services. Plaintiffs' request for a contingency enhancement will be denied.

Plaintiffs suggest that another basis for awarding an enhanced fee is the exceptional level of success they attained. The court cannot conclude that such an enhancement would be appropriate in this case. While the court is persuaded that plaintiffs' efforts contributed to the legislature's redistricting plans for the State, and attained their goal of establishing the maximum number of majority black districts, the court attributes plaintiffs' success to the time expended toward achieving their goal, and has accounted for their success in the computation of hours for which they will receive compensation.[22]

Based on the foregoing, the court finds that plaintiffs' attorneys are entitled to attorneys' fees computed as follows:

| Attorney | No. Hours | Rate | Total |
|----------|-----------|------|-------|
| Carroll Rhodes | 926.23 | $110.00 | $101,885.30 |
| | 23.50 | 40.00 | 940.00 |
| John L. Walker | 106.10 | 110.00 | 11,671.00 |
| Michael Sayer | 192.50 | 95.00 | 18,287.50 |
| | 23.00 | 47.50 | 1,092.50 |
| Johnny Parker | 83.25 | 95.00 | 7,908.75 |
| Tomie Green | 4.20 | 95.00 | 399.00 |
| Wilbur Colom | 111.62 | 95.00 | 10,603.90 |
| | 29.50 | 47.50 | 1,401.25 |
| Deborah McDonald | 344.13 | 95.00 | 32,692.35 |
| | 30.00 | 47.50 | 1,425.00 |
| | 5.00 | 40.00 | 200.00 |
| **TOTAL** | | | **$188,506.55** |

The court now addresses plaintiffs' claim for costs and expenses.

### EXPENSES

Plaintiffs' attorneys seek an award of costs and reimbursement of out-of-pocket expenses as follows:

Carroll Rhodes

| | | |
|---|---|---|
| Filing Fee | $ | 120.00 |
| Photocopying | | 7,586.55 |
| Telecopier | | 600.00 |
| Business Lunches | | 732.22 |

| | |
|---|---|
| Transportation | |
| Air Fare | |
| 6/10/91 | 714.00 |
| 8/09/91 | 828.00 |
| Mileage | |
| 7320 miles @ 22/mile | 1,610.40 |
| Taxi | 18.00 |
| Brief Printing Costs | |
| 8/91 | 7,680.65 |
| 10/91 | 244.86 |
| Lodging | 104.73 |
| Parking | 35.50 |
| Expert Witness Fees | |
| Sen. Henry Kirksey | 6,000.00 |
| Dr. Alan Lichtman | 2,200.00 |
| Dr. Richard Engstrom | 400.00 |
| Ms. Janaki Hall and Ms. Duana Watkins | 25,000.00 |
| Total: | $ 53,874.91 |

---

**22.** Moreover, it is again worth noting that plaintiffs' level of success in their efforts before the court was quite low.

Deborah McDonald

| Transportation | |
|---|---|
| Mileage | 2,491.25 |
| Business Lunches | 32.65 |
| Photocopying | 235.00 |
| Total: | $ 2,758.90 |

John L. Walker

| Photocopying | |
|---|---|
| MS Supreme Court opinion | 1.00 |
| Document Reproduction | 1,607.98 |
| Video Tape | 14.05 |
| Secretarial Contract Service | 125.00 |
| Travel, meals and lodging | 30.50 |
| Postage | 125.26 |
| Long Distance Telephone charges | 238.19 |
| Investigation Fee | 30.00 |
| Shipping Fees | 309.50 |
| Telecopier | 223.00 |
| Total | $ 2,704.48 |

Wilbur Colom

| Photocopying | 331.61 |
|---|---|
| Transportation | |
| Mileage | 445.00 |
| Lodging | 342.89 |
| Miscellaneous Per Diem | 425.00 |
| Telecopier | 448.50 |
| Total | 1,933.00 |
| **TOTAL** | **$61,279.29** |

While some of these items are recoverable, many are not.

■ Plaintiffs are entitled to recover expert witness fees, but only as provided by 28 U.S.C. § 1920 and 28 U.S.C. § 1821.[23] The Supreme Court has held that fee-shifting provisions, such as that applicable here, which restrict the prevailing party's recovery to "attorney's fees," rather than to "attorney's fees and expert witness fees," or "reasonable litigation expenses," must be applied in accordance with their clear terms, such that the term "attorney's fees" cannot be read to include expert fees. *West Virginia Univ. Hosp., Inc. v. Casey,* — U.S. —, — – —, 111 S.Ct. 1138, 1145–47, 113 L.Ed.2d 68 (1991). Such statutes, the Court held, "convey[ ] no authority to shift expert fees." *Id.* at —, 111

S.Ct. at 1148. The only expert fee recoverable is the $40 per day witness fee provided under § 1920 and § 1821. *Id.* In the case at bar, three experts testified on plaintiffs' behalf, Alan Lichtman, Sen. Henry Kirksey and Janika Hall. Plaintiffs are entitled to recover the sum of $120 for those witness fees. The remaining $33,480 of Mr. Rhodes' request for expert witness fees must be disallowed.[24]

■ Mr. Rhodes requests the sum of $7,680.65 for the printing of plaintiffs' jurisdictional statement for filing in the Supreme Court and an additional $244.86 for the printing of a brief opposing defendants' motion to dismiss or affirm. These items must also be disallowed, as Rule 50.3 of the Rules of the Supreme Court specifically states that "[t]he expenses of printing briefs, motions, petitions, or jurisdictional statements are not taxable." *See Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 957 (1st Cir.1984); *Jordan v. Allain,* 619 F.Supp. 98, 116 (N.D.Miss.1985).

■ Airfare expenses claimed by Mr. Rhodes in the sum of $1542 appear to be for travel to Washington, D.C. in June 1991 in connection with the Section 5 preclearance review and in August 1991 to deliver appeal papers to the Supreme Court. A charge of $104.73 for lodging and of $18 for taxi charges also appear to have been incurred during Mr. Rhodes' June 1991 travel to Washington. In the court's opinion, these expenses should not be allowed. The court has previously determined that Mr. Rhodes' services pertaining to the Section 5 submission are not compensable and thus, travel and lodging expenses relating to that matter would not be recoverable.

23. 28 U.S.C. § 1920 includes "[f]ees for ... witnesses" in the listing of recoverable costs. 28 U.S.C. § 1821 provides for the payment of a $40 per day witness fee for each day of the witness' attendance at trial.

24. The Civil Rights Attorneys' Fee Award Act of 1976 was amended last year by the Civil Rights Act of 1991, Pub.L. 102–166 § 113(a), to provide: "In awarding an attorney's fees under subsection (b) of this section in any action or proceeding to enforce a provision of Section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee." 42 U.S.C. § 1988(c). Since this lawsuit is not an action or proceeding to enforce 42 U.S.C. § 1981 or § 1981a, this limited authorization of expert fees is inapplicable, even assuming retroactive application.

As for Mr. Rhodes' August 1991 travel, there has been no showing that it was necessary that he personally travel to Washington in connection with the appeal and expenses for that travel will similarly be disallowed.

For the same reason that the court determined that Mr. Rhodes was not entitled to recover attorney's fees for his travel time, the court now concludes that his claim for mileage expenses relating to that travel will not be allowed. In this regard, Mr. Rhodes seeks recovery of mileage expenses in the amount of $1610.40, representing 7320 miles at a rate of $.22 per mile. As to the vast majority of those miles, 7020, Mr. Rhodes' submissions, as noted *supra*, do not indicate the nature or reason for his travel, nor his point of departure or destination. Thus, $1544.40 of his claim for mileage expenses will not be allowed. However, a supplemental filing by Mr. Rhodes documenting his time and expenses in responding to defendants' reply to the present motion contains more detailed information concerning his travel and mileage expense; the mileage expense included in this supplemental filing, for $66, will be allowed.

Mr. Rhodes requests reimbursement of $732.22 for "business lunches" on forty-four separate dates. With the exception of meals during the trial of this cause, which totalled $79.40, the court is of the opinion that the charging of this item of expense to the defendants would be inappropriate. Accordingly, $652.82 of Mr. Rhodes' lunch bill will be disallowed.

While a prevailing party is entitled to recover expenses for photocopying, those expenses must be reasonable. Mr. Rhodes requests the sum of $7,586.55, as follows:

| | | |
|---|---|---|
| 2/4/91 | Copies of Maps | $ 5.00 |
| 3/27/91 | Copies of Maps | 15.00 |
| 4/2/91 | Copies of Maps | 10.00 |
| 4/3/91 | Copies of Maps | 5.00 |
| 6/10/91 | Newspaper Article | .40 |
| 3/91–3/92 | Copies of Pleadings, exhibits, affidavits, declarations, letters and other correspondence | |
| | 986 pgs × 20 = 19,720 pgs × $.25/pg | 4,930.00 |
| 3/92–6/92 | Attorney fee exhibits, affidavits, declarations, motions and correspondence, and copies of pleadings | |
| | 350 pgs × 15 sets = 5,250 pgs × $.25/pg | 1,312.50 |
| 3/91–3/92 | Copies of plans | |
| | 979 pgs × 2 = 1,958 pgs. | 489.50 |
| 10/90–3/92 | Copies of cases | |
| | 684 pages at $.25/page | 171.00 |
| 7/27/92–8/28/92 | Copies of cases | |
| | 251 pages at $.25/page | 62.75 |
| 8/28/92 | 12 Copies of Reply w/only 8 copies of exhibits, | |
| | 2,352 pages at $.25/page | 588.00 |

Mr. Rhodes' submission reflects that for the period from March 1991 to March 1992, twenty copies were made of "pleadings, exhibits, affidavits, declarations, letters and other correspondence." From March 1992 through June 1992, fifteen copies were made of such materials, and by August, twelve copies of these materials were made. The court cannot fathom the necessity of twenty, fifteen, or even twelve copies of each pleading, affidavit, declaration, letter, et cetera. Rather, it seems to the court that no more than nine copies of

these materials was necessary.[25] Accordingly, Mr. Rhodes' request for photocopying expenses will be reduced by $3262.00,[26] to the sum of $4324.55.

Attorney Deborah Walker seeks reimbursement for airfare in the amount of $897 in connection with travel to Washington, D.C. during June 1991 for services relating to the State's Section 5 preclearance submission to the Department of Justice. The court finds that this expense should be disallowed for the same reasons that this court determined that Mr. Rhodes' request for his airfare on that occasion was not compensable. Ms. McDonald also seeks to recover $95 in mileage expenses for travel from her office in Fayette, Mississippi to Jackson on various dates from April 13, 1991 to June 11, 1991. Her time submissions reflect that the activities in which Ms. McDonald was involved on each of these trips were related either to lobbying and/or the Section 5 submission and therefore, these mileage expenses are not recoverable. The court is of the opinion that the remainder of Ms. McDonald's expenses are recoverable and will be awarded.

■ Mr. Walker seeks recovery of expenses in the sum of $2,704.48. Of that amount, the court finds that he is entitled to recover $2,549.48. Secretarial services, for which Mr. Walker has included a charge of $125, are part of an attorney's overhead and thus charges for such services are not recoverable as an item of cost or expense. A further charge by Mr. Walker for a $30 "Investigation Fee" will not be allowed by the court; there has been provided no indication as to the nature or necessity or relationship of any "investigation" to this litigation.

Mr. Colom requests $1,922 in costs and expenses. The court is of the opinion that he may recover $1,508. His submission includes a number of entries on various dates for "miscellaneous per diem [sic]," totalling $425. While the court will allow

Mr. Colom's hotel charges on these dates, the court discerns no basis for granting the recovery of these unspecific, undocumented per diem charges.

Based on the foregoing, costs and expenses will be awarded to plaintiffs' attorneys in the following amounts:

| | |
|---|---|
| Carroll Rhodes | $ 4,625.45 |
| Deborah McDonald | 1,499.25 |
| John L. Walker | 2,549.48 |
| Wilbur Colom | 1,508.00 |
| **TOTAL** | **10,182.18** |

Thus, plaintiffs are entitled to a total award of attorneys' fees and expenses in the amount of $198,688.23.

As the State is a defendant, and the additional Joint–Committee defendants were sued in their official capacities, the plaintiffs' award of fees and expenses shall be paid by the State of Mississippi. *See Martin v. Mabus*, 734 F.Supp. at 1227–28.

CONCLUSION

In conclusion, the court orders the following:

(1) That plaintiffs' motion to dissolve the three-judge court and to remand to the managing judge for a determination of their motion for attorneys' fees and expenses is denied. The three-judge court shall remain convened until such time as plaintiff has formally complied with this court's opinion and order of May 21, 1992;

(2) That plaintiffs shall recover from the State of Mississippi the sum of $198,688.23 representing their attorneys' fees and expenses as set forth herein.

SO ORDERED.

---

25. This number would be sufficient to provide copies for each judge on the three-judge panel, each defendant and plaintiffs.

26. The photocopies of the reply on August 28, 1992 included 12 copies of the brief, which was 34 pages in length. The court has reduced the number of copies of the brief to nine, but has not reduced the number of exhibits.