United States Court of Appeals,

Fifth Circuit.

No. 92-7764.

Hollis WATKINS, et al., Plaintiffs-Appellants, Cross-Appellees,

v.

Kirk FORDICE, Governor of the State of Mississippi, et al., Defendants-Appellees, Cross-Appellants.

Nov. 24, 1993.

Appeals from the United States District Court for the Southern District of Mississippi.

Before REAVLEY, HIGGINBOTHAM and EMILIO M. GARZA, Circuit Judges.

REAVLEY, Circuit Judge:

Black citizens of Mississippi (Appellants) complain on appeal that the three-judge district court erred in calculating the amount of attorneys' fees it awarded them under the Voting Rights Act of 1965, 42 U.S.C. § 1973*l*(e), and the Civil Rights Attorneys' Fees Award Act of 1976, 42 U.S.C.A. § 1988 (West Supp.1993). Mississippi officials[1] (the State) argue on cross-appeal that Appellants did not prevail in the underlying action and, thus, should not recover attorneys' fees. We vacate and remand.[2]

I. BACKGROUND

[1]The appellees include, in their representative capacities and as members of the State Board of Election Commissioners, Kirk Fordice, the Governor of Mississippi, Mike Moore, the Attorney General of Mississippi, and Dick Molpus, the Secretary of State of Mississippi.

[2]We held in *Weiser v. White,* 505 F.2d 912, 913, 918 (5th Cir.), *cert. denied,* 421 U.S. 993, 95 S.Ct. 1998, 44 L.Ed.2d 482 (1975), that we lacked jurisdiction over an appeal of a three-judge court order addressing the issue of attorney's fees. We so held under the belief that the Supreme Court had exclusive jurisdiction over the matter pursuant to 28 U.S.C. § 1253. *Weiser,* 505 F.2d at 918. The Supreme Court's subsequent indication that it has no jurisdiction to decide disputes surrounding the award of attorney's fees, *Supreme Court of Virginia v. Consumers Union of United States, Inc.,* 446 U.S. 719, 737 n. 16, 100 S.Ct. 1967, 1977 n. 16, 64 L.Ed.2d 641 (1980), and the Court's refusal to review this case for lack of jurisdiction, *Watkins v. Fordice,* --- U.S. ----, 113 S.Ct. 1573, 123 L.Ed.2d 142 (1993), force us to reconsider our position. Once again "time, tide and the ceaseless flow from on high leaves [an aspect of *Weiser* ] as a historical marker of the law that was." *United States v. Louisiana,* 543 F.2d 1125, 1127 (5th Cir.1976). We now hold that we have jurisdiction to 28 U.S.C. § 1291 to hear appeals from three-judge courts on the issue of attorney's fees.

Using 1990 census data, Mississippi in 1991 redistricted both houses of its legislature to replace its existing 1982 apportionment scheme. The legislature sought preclearance under § 5 of the Voting Rights Act, but on July 2, 1991, the United States Attorney General objected to the 1991 redistricting plans.

Meanwhile, on June 28, 1991, Appellants asked the three-judge district court to enjoin upcoming elections under either the existing scheme or the newly enacted 1991 plans, claiming that both diluted their votes. In August, the court denied Appellants' requested injunction because the primary elections were only a month away. As interim relief, the court ordered that the upcoming September and October primary elections proceed under the existing scheme, even though it was malapportioned. The court denied Appellants' subsequent motion for a stay pending appeal, and the Supreme Court affirmed. Appellants followed with a motion to enjoin the enforcement of the district court's order, arguing that it contained new procedures that were not precleared under § 5 of the Voting Rights Act. The court denied the injunction, and again, Appellants were rebuffed by the Supreme Court.

Then, during its 1992 regular session, Mississippi's legislature passed new redistricting plans, which the Attorney General precleared. These plans satisfied all of Appellants' demands; most significantly, they created the maximum number of electable black majority districts.[3] Because the 1992 scheme mooted Appellants' claims, the court ordered the parties to file necessary motions for the final disposition of the case.

Appellants requested dissolution of the three-judge court, remand of the case to a single-judge district court, and an award of attorneys' fees under 42 U.S.C. §§ 1973*l*(e), 1988. The court denied Appellants' request for dissolution and awarded them $198,688.23 in attorneys' fees and expenses, instead of the $866,938.39 requested.

On appeal, Appellants argue (1) the district court did not properly calculate the attorneys' fees, (2) the fee award should be enhanced, (3) the court should have held an evidentiary hearing on

---

[3]An "electable black majority district" is defined as a district containing a black voting age population of 607, or 657 in the Mississippi Delta.

the issue of attorneys' fees, and (4) the court erred by not including post-judgment interest in the award of attorneys' fees. On cross-appeal, the State contends (1) Appellants are not prevailing parties, and (2) the court's award of attorneys' fees is excessive.

## II. ANALYSIS

*A. Prevailing Party*

Only "prevailing parties" may recover attorneys' fees under 42 U.S.C. §§ 1973*l*(e), 1988. A plaintiff prevails if the relief obtained, through judgment or settlement, materially alters the defendants' behavior in a way directly benefitting the plaintiff. *Farrar v. Hobby,* --- U.S. ----, ----, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). To attain prevailing party status, the plaintiff must show (1) the goals of the lawsuit were achieved, and (2) the suit caused the defendants to remedy the discrimination. *Associated Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.,* 919 F.2d 374, 378 (5th Cir.1990). The lawsuit must be a "substantial factor or a significant catalyst in motivating the defendants to end their unconstitutional behavior." *Posada v. Lamb County,* 716 F.2d 1066, 1072 (5th Cir.1983) (quoting *Williams v. Leatherbury,* 672 F.2d 549, 551 (5th Cir.1982)).

No one disputes that the 1992 redistricting scheme satisfied all Appellants' objectives. The parties only contest whether Appellants' lawsuit *caused* the legislature to enact the 1992 plans. The State contends that the Attorney General's July 1991 objection letters and Art. 13 § 254 of the Mississippi Constitution (requiring the legislature to redistrict) motivated the plans.

The district court characterized Appellants' prevailing-party status as a "close question." *Watkins v. Fordice,* 807 F.Supp. 406, 411 (S.D.Miss.1992). Mississippi's legislature began the reapportionment process, held a series of public hearings, and passed the 1991 redistricting plans months before Appellants filed suit. Further, the district court and the Supreme Court rebuffed Appellants at every turn. Yet Mississippi's 1992 redistricting plans (unlike the 1991 plans) created the maximum number of electable black majority districts, which is exactly what Appellants sought. The district court ultimately concluded that, despite their relative ineffectiveness before the court, Appellants were "prevailing parties" under 42 U.S.C. §§ 1973*l*(e), 1988. *Id.* ("[I]t is likely the case that plaintiffs, and this lawsuit, played a motivating role in shaping the particular apportionment plans

which the legislature adopted.").

In Voting Rights Act cases, the chronology of events is particularly instructive on the role played by a plaintiff's lawsuit in ending the defendant's discriminatory activity. *Id.* In the spring of 1991, Mississippi's legislature enacted reapportionment plans, which everyone involved considered unacceptable. Appellants filed suit, the Attorney General issued objections letters, and the district court found the plans to be malapportioned. In an about-face, the legislature enacted a reapportionment scheme in the spring of 1992 that created the greatest number of electable black majority districts. The three-judge district court, intimately familiar with the facts of this case as well as the subtle forces at play during the evolution of the final reapportionment scheme, found Appellants' suit to be a motivating factor in the enactment of the 1992 plans. We conclude that the district court did not clearly err in its recognition of Appellants as prevailing parties.

*B. Attorneys' fee calculation*

Sections 1973*l*(e) and 1988 accord the district court discretion to award reasonable attorneys' fees to prevailing parties. To determine the award amount, the court must first calculate the "lodestar" by multiplying the number of hours reasonably spent on the litigation times a reasonable hourly billing rate. *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The court should consider the factors announced in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir.1974)[4] when analyzing the reasonableness of the hours expended and the hourly rate requested. Once determined, the lodestar may be adjusted upward or downward if the *Johnson* factors, not included in the reasonable fee analysis, warrant the adjustment. *Shipes v. Trinity Indus.,* 987 F.2d 311, 320 (5th Cir.1993). The lodestar, however, is presumptively reasonable and should be modified only in exceptional cases. *City of Burlington v. Dague,* --- U.S. ----, ----, 112

---

[4]In *Johnson,* this court listed the following factors to be considered when setting a reasonable fee: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*

S.Ct. 2638, 2641, 120 L.Ed.2d 449 (1992).

On appeal, we review the court's award of attorneys' fees for abuse of discretion and the supporting factual findings for clear error. *Von Clark v. Butler,* 916 F.2d 255, 258 (5th Cir.1990). Due to the district court's superior knowledge of the facts and the desire to avoid appellate review of factual matters, the district court has broad discretion in setting the appropriate award of attorneys' fees. *Hensley,* 461 U.S. at 436-37, 103 S.Ct. at 1941.

*1. Hours reasonably spent on litigation*

The party seeking attorneys' fees must present adequately documented time records to the court. Using this time as a benchmark, the court should exclude all time that is excessive, duplicative, or inadequately documented. *Hensley,* 461 U.S. at 432-34, 103 S.Ct. at 1939; *Von Clark,* 916 F.2d at 259. The hours surviving this vetting process are those reasonably expended on the litigation.

Here, the court considered each time entry documented by Appellants. From the total billable hours, the court disallowed 274 hours spent on lobbying-related activities, 230 hours of travel time, 86.87 hours of pre-litigation time which the court considered excessive, 125.4 hours the court characterized as duplicative or excessive, and four hours spent on press conferences. *Watkins,* 807 F.Supp. at 412-414. We find no reversible error in the district court's analysis.

### *a. Lobbying Activity*

Prior to filing suit, Appellants spent significant time lobbying the Mississippi Legislature and the Attorney General. Appellants contend they should be compensated for this time. We disagree.

Under §§ 1973*l*(e) and 1988, the district court may award attorneys' fees to a prevailing party in "any action or proceeding." Prevailing parties may recover only that time "reasonably expended on the litigation." *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. While prevailing parties may be compensated for time spent preparing to file suit, they may not recover for their pre-litigation participation in the preclearance process under § 5 of the Voting Rights Act. *Craig v. Gregg County,* 988 F.2d 18, 21 (5th Cir.1993).

Similarly, time spent lobbying a state legislature before filing a lawsuit is not time "reasonably expended on the litigation." In *Webb v. Board of Ed. of Dyer County,* the Supreme Court held that

the district court could, in its discretion, disallow "time spent pursuing optional administrative remedies." 471 U.S. 234, 244, 105 S.Ct. 1923, 1929, 85 L.Ed.2d 233 (1985). Lobbying resembles such an "optional remedy." Instead of filing suit, individuals may seek relief through the political process. While, at times, it may be advisable to pursue political alternatives before resorting to litigation, these activities, occurring before the initiation of a lawsuit, are not within the purview of "litigation." *See generally id.* at 242-43, 105 S.Ct. at 1928. Furthermore, Appellants did not show that "any discrete portion of the work product from the [lobbying] was work that was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement." *Id.* at 243, 105 S.Ct. at 1928-29. Because pre-litigation lobbying is not a necessary precursor to the filing of a lawsuit, the district court did not abuse its discretion when it deducted these hours during its lodestar analysis.

### b. Press Conferences

This circuit has not yet decided whether prevailing parties may recover attorneys' fees for time spent holding press conferences. The district court opined that time spent on press conferences is not spent "on the litigation." *Watkins,* 807 F.Supp. at 413. The Ninth Circuit, however, has allowed recovery when a prevailing party shows that the press conferences "contributed, directly and substantially, to the attainment of [the party's] litigation goals." *Davis v. San Francisco,* 976 F.2d 1536, 1545 (9th Cir.1992), *vacated in part on other grounds,* 984 F.2d 345 (9th Cir.1993). Without considering the merits of either position, we find no abuse of discretion in the district court's exclusion of the press-conference hours, because Appellants did not present any evidence regarding the efficacy of the press conferences, nor did they offer to present such evidence in their request for an evidentiary hearing.

### c. Other hours excluded

We find no error in the district court's exclusion of time it considered inadequately documented, excessive, or duplicative. Appellants did not adequately document their travel time. *Watkins,* 807 F.Supp. at 413 n. 11 ("The court ... is ... at a complete loss to divine where or why Mr. Rhodes was traveling during these 224 hours."); *see Von Clark,* 916 F.2d at 260 ("[T]ime and time

again this court has admonished attorneys ... to keep careful time records so that the court may determine if the hours submitted are reasonable."). Concerning the time the court characterized as excessive or duplicative, we defer to the court's experience and understanding of the case. *See Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941.

*2. Setting hourly rate*

After determining the hours reasonably spent on the litigation, the court must set a reasonable hourly rate. Appellants submitted affidavits of their attorneys' customary billing rates, as well as affidavits from other attorneys in the community showing the prevailing market rates in the locality to be $150 to $200 for attorneys with more than ten years' experience, and $100 to $150 for those with four to ten years' experience. In response, the State introduced attorneys' affidavits showing the market range to be between $75 and $125. Based upon these affidavits, the court set reasonable hourly rates for the lodestar calculation that were within the market range, but deviated from the customary billing rates of appellants' attorneys.

In *Islamic Center of Miss. v. Starkville,* we held that if the attorney's normal billing rate is within the range of market rates for attorneys with similar skill and experience, and the trial court chooses a different rate, the court must articulate its reasons for doing so. 876 F.2d 465, 469 (5th Cir.1989). Here, the court gave the following statement to support its decision:

> In arriving at these figures, the court has considered the evidence submitted by the parties relating to the local rates of attorneys, and has taken into account the experience and expertise of each attorney, the nature and complexity of the case, including the level of skill and expertise required by the case, and the demands imposed on the attorneys by the case.

*Watkins,* 807 F.Supp. at 416. Although the court correctly considered the *Johnson* factors when setting the hourly rate, listing these factors is no substitute for a discussion of the facts supporting the court's determination of a reasonable hourly rate at odds with the normal charge of the attorney. While the district court may have correctly chosen the hourly rates, we cannot review the court's decision without knowing the reasoning behind the its choice. Simply tracking the language of *Johnson* does not assist us in our review of the court's actions. Therefore, we reluctantly remand the case for the district court to either (1) award each attorney's customary billing rate, or (2) state the reasons for its decision to do otherwise.

Appellants also argue that the district court erred in its decision to discount the hourly rate billed for travel time and work performed on clerical activities. We conclude that the district court did not abuse its discretion by reducing these rates. *See Johnson,* 488 F.2d at 717 (stating that administrative work performed by attorneys may command a lesser rate); *Shirley v. Chrysler First, Inc.,* 763 F.Supp. 856, 858, 861 (N.D.Miss.1991) (compensating travel time at a lesser rate).

*3. Adjustment of the Lodestar*

Not surprisingly, Appellants argue the lodestar should be enhanced, while the State contends it should be reduced. But the lodestar is presumptively reasonable. *City of Burlington,* --- U.S. at ----, 112 S.Ct. at 2641. The district court should not enhance the lodestar unless the prevailing party shows that enhancement is *necessary* to make the award of attorneys' fees reasonable. *Blum v. Stenson,* 465 U.S. 886, 897-98, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). After considering the *Johnson* factors, including Appellants' success, the district court found that the lodestar did not require modification.[5] *Watkins,* 807 F.Supp. at 417. The district court has broad discretion in setting reasonable attorneys' fees, and we conclude the court did not abuse its discretion by refusing to adjust the lodestar.

*C. Evidentiary Hearing*

Appellants contend the district court should have held an evidentiary hearing to determine: (1) the prevailing market rates for contingency and non-contingency fee cases, and (2) the necessity of enhancement in civil rights cases.[6] The party requesting the hearing has the burden to show this court what additional evidence it could provide in the hearing that the court does not already have. *Associated Builders,* 919 F.2d at 378.

The district court did not err in its refusal to hold an evidentiary hearing. The court had

---

[5]Appellants argue that the district court erred in its reduction of the lodestar, but the court did not reduce the lodestar. Appellants are actually complaining about the court's determination of hours reasonably spent on the litigation, which is the first step in calculating the lodestar. As discussed earlier, the court did not err in its exclusion of hours it considered excessive, duplicative, not adequately documented, or not expended on the litigation.

[6]In their appellate brief, Appellants raise reasons for an evidentiary hearing that were not presented to the district court. We will ignore these extraneous arguments. *See In re Goff,* 812 F.2d 931, 933 (5th Cir.1987).

adequate documentation on the prevailing market rates in the locality; the Supreme Court recently held that any difference in market rates between contingency and non-contingency fee cases should not be considered, *City of Burlington,* --- U.S. at ----, 112 S.Ct. at 2642; and, the decision of whether to enhance the lodestar is based upon the particular facts of each individual case.

*D. Expenses*

Lastly, Appellants argue the district court erred in its exclusion of certain expenses as unreasonable. The only complaint Appellants specifically briefed is the district court's exclusion of certain copying expenses: Appellants made twelve copies, and the court allowed compensation for nine. The district court did not abuse its discretion in this determination.

### III. CONCLUSION

We REMAND this case to allow the court to reexamine its determination of a reasonable hourly rate. The court should either use the rate normally charged by the attorneys, or give adequate support for a different award. We further instruct the court to include post-judgment interest on its award of attorneys' fees, beginning from the date of the court's initial order awarding attorneys' fees. We agree with the court in all other respects.

VACATED AND REMANDED.