Hollis WATKINS, et al., Plaintiffs,

v.

Kirk FORDICE, Governor of Mississippi, et al., Defendants,

The Standing Joint Legislative Committee On Reapportionment of The Mississippi Legislature et al., Defendants–Intervenors.

Civ. A. No. J92–0364(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

April 15, 1994.

Deborah McDonald, Natchez, MS, Tomie T. Green, John L. Walker, Jr., Walker, Walker & Green, Jackson, MS, Carroll Edward Rhodes, Jazlehurst, MS, for plaintiffs.

Giles Wheeler Bryant, Mississippi Atty. General's Office, James L. Warren, III, Waycaster & Warren, Michael B. Wallace, Phelps Dunbar, William A. Alla, Hubbard T. Saunders, IV, Crosthwait, Terney, Noble & Allain, Daniel E. Lynn, U.S. Attorney's Office, Jackson, MS, for defendants.

Before BARKSDALE, Circuit Judge and TOM S. LEE and PICKERING, District Judges.

*MEMORANDUM OPINION*
*AND ORDER*

Previously before this three-judge court for consideration was a motion by plaintiffs for an award of attorneys' fees and expenses pursuant to 42 U.S.C. §§ 1973*l* (e) and 1988. By memorandum opinion and order of October 29, 1992, the court concluded that for purposes of an attorneys' fees award, plaintiffs were the prevailing parties in this voting rights litigation. *Watkins v. Fordice,* 807 F.Supp. 406, 410–11 (S.D.Miss.1992). The court then determined, after reviewing the parties' extensive submissions, that plaintiffs should recover attorneys' fees of $188,506.55, together with $10,182.18 in expenses. In arriving at what it considered an appropriate award, the court cut a significant number of the hours for which plaintiffs sought attorneys' fees compensation and found, in addition, that the hourly rate claimed by all but one of plaintiffs' attorneys was too high. The court further refused to award an enhancement with respect to plaintiffs' attorneys' fees. Finally, the court disallowed a substantial amount of the expenses for which plaintiffs sought reimbursement. A final judgment was entered on March 23, 1993.

Plaintiffs appealed the court's ruling, arguing primarily that the fee award was exceedingly low, particularly in light of the exceptional results they were able to obtain through a negotiated compromise and settlement.[1] Defendants[2] cross-appealed, challenging the court's conclusion that plaintiffs were the prevailing parties and contending, as well, that the court's award of attorneys' fees was excessive. The Fifth Circuit, in addressing the issues presented for review, accepted the court's conclusion that plaintiffs

1. Plaintiffs appealed simultaneously to the Supreme Court and the Fifth Circuit, and asked for and were granted a stay by the Fifth Circuit pending the Supreme Court's resolution of plaintiffs' appeal. In response to the plaintiffs' appeals, the defendants cross-appealed. By order of March 22, 1993, the Supreme Court dismissed plaintiffs' and defendants' appeals for want of jurisdiction. *Watkins v. Fordice,* — U.S. —, 113 S.Ct. 1573, 123 L.Ed.2d 142 (1993); *Fordice v. Watkins,* — U.S. —, 113 S.Ct. 1573, 123 L.Ed.2d 142 (1993).

2. Defendants are Kirk Fordice, Governor of the State of Mississippi; Mike Moore, Attorney General of the State of Mississippi; and Dick Molpus, Secretary of State of the State of Mississippi, in their respective official capacities and as members of the State Board of Election Commissioners; the Standing Joint Legislative Committee on Reapportionment of the Mississippi Legislature; Tim Ford, in his official capacity as Speaker of the Mississippi House of Representatives; and Ollie Mohamed, in his official capacity as President Pro Tempore of the Mississippi Senate.

had prevailed for purposes of assessing attorneys' fees. *Watkins v. Fordice,* 7 F.3d 453 (5th Cir.1993). Then, in reviewing this court's analysis leading to the attorneys' fee award, the appellate court determined that this court had properly declined to award compensation for approximately 450 hours which it found to be "duplicative, excessive, [and] inadequately documented," *id.* at 457, together with an additional approximately 280 hours which this court had found were otherwise not properly compensable, *id.* at 458. However, the Fifth Circuit remanded for further consideration on the issue of ap-propriate hourly rates for plaintiffs' attorneys. We will first reach this issue, following which we will address plaintiffs' request for attorneys' fees for work performed on appeal.

## ISSUE ON REMAND

Plaintiffs were represented in this action by seven attorneys for each of whom attorney's fee compensation was sought. With the exception of one attorney, Mike Sayer, plaintiffs requested higher hourly rates than were awarded, as follows: [3]

| Attorney | Rate Requested | Rate Awarded |
|---|---|---|
| Carroll Rhodes | $160.00 | $110.00 |
| John L. Walker | $160.00 | $110.00 |
| Deborah McDonald | $135.00 | $ 95.00 |
| Tomie Green | $135.00 | $ 95.00 |
| Johnny Parker | $135.00 | $ 95.00 |
| Wilbur Colom | $125.00 | $ 95.00 |

This court recited in its memorandum opinion awarding these lower rates that it had, in arriving at these figures,

> considered the evidence submitted by the parties relating to the local rates of attorneys and has taken into account the experience and expertise of each attorney, the nature and complexity of the case, including the level of skill and expertise required by the case, and the demands imposed on the attorneys by the case.

*Watkins,* 807 F.Supp. at 416. On appeal, the Fifth Circuit determined, in accordance with the rule stated in *Islamic Center of Mississippi v. Starkville,* 876 F.2d 465 (5th Cir. 1989), that in light of the fact that the "customary billing rates of [plaintiffs'] attorneys" fell "within the market range," this court was bound to articulate its reasons for choosing different hourly rates. *Watkins,* 7 F.3d at 459. Though recognizing that the factors this court had identified are properly considered in setting hourly rates, the Fifth Circuit found this court's recitation insufficiently explanatory and therefore remanded the case for this court to either "(1) award each attorney's customary billing rate, or (2) state the reasons for its decision to do otherwise." *Id.* That is now this court's charge.

## CONSIDERATION BY THREE-JUDGE COURT

■ As a preliminary matter, plaintiffs have raised an issue as to whether the determination of appropriate hourly rates on remand is to be made by the three-judge court or the single district judge. They point out that the three-judge court was dissolved upon entry of the October 29, 1992 memorandum opinion and insist, therefore, that the issue on remand is to be decided by the managing district judge. Defendants, on the other hand, contend that the opinion which the Fifth Circuit vacated was that of the three-judge court such that the remand must therefore necessarily be addressed to the three-judge court.[4] In the court's opinion, it

---

**3.** Mr. Sayer requested and was awarded fees at the hourly rate of $95.00.

**4.** Plaintiffs have insisted from the outset that the attorneys' fees issue was to be decided by the managing district judge rather than the three-judge court. They took that position in the briefing before this court on their attorneys' fees motion, and similarly urged that position on their appeal to the Supreme Court, arguing that the three-judge court lacked jurisdiction to decide the attorneys' fee issue.

is implicit in the opinion remanding this cause that the remand is to the court which made the initial decision on attorneys' fees, and the remanded issue will therefore be addressed by the three-judge court.[5]

## SCOPE OF INQUIRY ON REMAND

■ In addition to the question whether the remand is properly addressed to the single district judge or the three-judge court, an issue is presented as to the scope of this court's inquiry on remand. Defendants submit that the court has only to consider on remand the fee awards to two of plaintiffs' attorneys, Carroll Rhodes and Wilbur Colom, since none of plaintiffs' other attorneys who were denied the requested hourly rates identified a normal or customary billing rate in their affidavits, or otherwise.

While the Fifth Circuit directed that the district court award "each" attorney his or her customary billing rate, or explain its reasons for not doing so, it appears the court was under the mistaken impression that plaintiffs had submitted to this court "affidavits of their attorneys' customary billing rates....," *Watkins*, 7 F.3d at 458, and that this court had "deviated from the customary billing rates of [plaintiffs'] attorneys," *id.* at 459. That is not entirely accurate. *Some* of plaintiffs' attorneys—Mr. Rhodes, Mr. Colom and Mr. Sayer—had submitted affidavits to this court setting forth their customary hourly rates;[6] the others did not. Three of those other attorneys, Ms. McDonald, Ms. Green and Mr. Parker, made *no representations at all* as to their regular, normal and/or customary billing rates, or even as to what they considered would be reasonable hourly rates for their services. And though it was Mr. Walker's "opinion" that his services should be compensated at an hourly rate in the range of $130 to $160, he did not identify the hourly rate he normally charges.

That plaintiffs recognized this omission is reflected by their brief on appeal to the Fifth Circuit, in which they challenged "[t]he district court's articulated reason for the reduced rate for Rhodes and Colom," on the basis that "[t]wo of plaintiff's counsel's [Rhodes' and Colom's] billing rates fell within the prevailing market rate but exceeded the rate awarded them by the trial court." (Plaintiffs' Brief on Appeal, p. 27) (bracketed material in original).[7] It was not contended that the other attorneys were awarded less than their normal hourly rates.

In their response to defendants' memorandum brief on remand, filed in January 1994, plaintiffs advised that each of their attorneys was submitting a supplemental affidavit setting forth his or her customary billing rate, which it was said would be as follows: Mr. Rhodes would claim $160 (plus a delayed enhancement that would increase his rate to

---

5. Under these circumstances, the court perceives no need for an order reconvening the three-judge court.

6. Mr. Rhodes stated in his affidavit that he has "billed fee paying clients, in complex non-contingent civil cases, for the years 1988–1992 at the rate of $150.00 per hour. I recently raised my hourly rate ... to $160.00 per hour." Similarly, Mr. Colom stated that his "regular and customary billing rate for non-contingency fee paying clients is $125.00 per hour...."

7. Further, plaintiffs stated in the text of their brief that "plaintiffs' counsel detailed the legal work they had performed on the case and their normal billable hourly rate for complex non-contingent cases." Plaintiffs' Brief on Appeal, p. 15. In a footnote accompanying that statement, plaintiffs set forth the number of years' experience of each attorney, and stated:

Attorneys Rhodes, Colom, and Sayer stated, under oath, their customary billable hourly rate for non-contingent cases. Additionally, Walker stated the hourly rate he had been awarded in a 1973–77 civil rights case. Rhodes' customary non-contingent billable hourly rate was $150.00 between 1988–1992. He raised his hourly rate in such cases in 1992 to $160.00. Colom's customary billable non-contingent hourly rate was $125.00. And, Sayer's customary billable non-contingent hourly rate was $95.00. Walker had been awarded, in 1980, $100.00 per hour for work performed in 1973–77.

No indication was given that Ms. McDonald, Mr. Parker or Ms. Green had identified a customary hourly rate, and while plaintiffs expressed that Mr. Walker had previously received a court-awarded hourly rate of $100.00, no representation was made that Walker had stated a customary hourly rate.

$175); Ms. McDonald and Mr. Walker were to assert a normal billing rate of $160; Mr. Colom was to represent a customary billing rate of $125 per hour; and Mr. Parker and Ms. Green were to claim a regular hourly billing rate of $135. More than two months have passed since the court was advised that these supplemental affidavits would be furnished, but to date, none has been filed. Mr. Rhodes and Ms. McDonald have submitted supplemental affidavits in connection with their claim for attorneys' fees on appeal in which they advise of their current hourly rates.[8] Clearly, the court has before it on remand the issue of Mr. Rhodes' hourly rate. But as to Ms. McDonald, even though she has advised the court of her current hourly rate, she still has not informed the court, through proper proof, of her rate during the time reflected by her submissions on the original attorneys' fees motion.

It is not the court's responsibility to ensure that attorneys present evidence to substantiate their positions. That is the obligation of the attorneys. Plaintiffs represented to the court that affidavits would be furnished to satisfy plaintiffs' burden to prove the hourly rates of their attorneys. The simple fact is that they have not been submitted, and as the record currently stands, there is no evidence of the hourly rate of attorneys Parker, Walker or Green, and no evidence of the hourly rate of attorney McDonald for the time period at issue.[9] Given all of these circumstances, the conclusion that this court did not violate the rule of *Islamic Center* as to these attorneys appears reasonable, since this court cannot be said to have failed to award those attorneys their "normal billing rates" when the attorneys have not advised the court of their normal billing rates. The hourly rates that the court awarded these attorneys were not what plaintiffs had requested, but at the same time, they were not (at least so far as the proof showed) "at odds with the normal charge[s] of the attorney[s]." *Watkins,* 7 F.3d at 459. It would seem, therefore, in view of the absence of record proof of these attorneys' rates, that the court's inquiry into hourly rates need not extend beyond the rates of Mr. Rhodes and Mr. Colom. However, because the rate of "each" attorney is arguably before the court for reconsideration, the court will not so limit its consideration.

## GENERAL CONSIDERATIONS

Ultimately, whether the court must reexamine the rates of all attorneys or just those of Mr. Rhodes and Mr. Colom is of little practical consequence, for the primary considerations which impacted the court's decision on hourly rates stemmed more from the court's broader view of the case as a whole rather than focusing on factors respecting any particular attorney, such as his or her experience and expertise. The court would therefore make the following general observations about the case which ultimately bear on the attorneys' fees issue and which have most significantly affected the court's decision as to hourly rates.

■ Decisions respecting awards of reasonable attorneys' fees involve consideration of the factors identified in *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714, 716–19 (5th Cir.1974), which are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by

---

8. Mr. Rhodes asserts in his supplemental affidavit that his hourly rate in 1992 was $160 and that his hourly rate is now $175; Ms. McDonald claims that her present hourly rate for non-complex non-contingency cases ranges from $100 to $150, though she requests $160 per hour for her work on the appeal in this case because of the non-contingent nature of the case and its complexity.

9. Plaintiffs have insisted throughout the court's consideration of the attorneys' fee issue that the

court should hold a hearing on, *inter alia,* the question of hourly rates. This court declined to do so initially, and the Fifth Circuit agreed that such a hearing was not required. *Watkins,* 7 F.3d at 459–60. Plaintiffs have now suggested that if the court still has questions about their rates after reviewing these supplemental affidavits, it could hold an evidentiary hearing. The court cannot agree that this procedure is warranted. Plaintiffs have had the opportunity to provide their proof and have not done so.

the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. These factors are to be considered in the following framework:

> (1) ascertain the nature and extent of the services supplied by the attorney; (2) value the services according to the customary fee and quality of the legal work; and (3) adjust the compensation on the basis of the other *Johnson* factors that may be of significance in that particular case.

*Leroy v. City of Houston,* 831 F.2d 576, 583 n. 11 (5th Cir.1987); *Sims v. Jefferson Downs Racing Ass'n,* 778 F.2d 1068, 1084 (5th Cir.1985). What is before the court is the second prong of this inquiry.[10] "This involves selection of an appropriate hourly rate based on prevailing community standards for attorneys of similar experience in similar cases." *Sims,* 778 F.2d at 1068.

Regarding the proof as to local rates of attorneys, this court recognized before, and the Fifth Circuit observed that plaintiffs had submitted affidavits showing a range of attorneys' fees of $100 to $150 per hour for attorneys with four to ten years' experience, and $150 to $200 an hour for those with ten to twenty years' experience. Defendants' affidavits showed the range to be $75 to $125. These affidavits provide some direction to the court in its endeavor, of course, but other evidence is also instructive. Indeed, reference to such other evidence is particularly

appropriate in light of the disparity in rates evidenced by the parties' affidavits. In this regard, the results of a bar survey conducted by the Mississippi Bar Association, as reported in *The Mississippi Lawyer,* Vol. XXXV (March–April 1989), and in *The Mississippi Lawyer,* Vol. XXXV (May–June 1989), are instructive.[11] The survey results reflect that the average hourly rate charged by the nearly 2000 attorneys who responded to the survey was $83, and the mean usual hourly rate was $75.[12] Further, based upon the length of practice from 0 to 29 years, the hourly rates reported ranged between $72.60 and $96.10. While the court is certainly not bound by the results of this survey in setting hourly rates, they do tend to suggest that the rates set forth in plaintiffs' affidavits are likely high and further tend to substantiate the range of rates represented by defendants' affidavits.

In addition to this evidence, the court considers that awards in similar cases place in question the range of rates claimed by plaintiffs. The court has been directed to no civil rights case covering the time period at issue in which an attorney in Mississippi has been awarded the $160 rate which Mr. Rhodes requested for his work in this case.[13] Indeed, as of the date of the court's original opinion on attorneys' fees in this cause, no court in this state had awarded an hourly rate even close to that amount. Rather, awards were made at rates ranging from $60 to $110 per hour. *See, e.g., Crowther v. Newton County,* No. E87–0046(L) (S.D.Miss. July 10, 1991) ($110); *Martin v. Mabus,* 734 F.Supp. 1216 (S.D.Miss.1990) ($75 to $105);[14]

---

**10.** The court has already performed the inquiry required by the first prong, but additional observations on that matter are included *infra,* at p. 553.

**11.** Although the survey was conducted in 1989, two years prior to the time period at issue, the court considers that it is still instructive.

**12.** Over a third of all members of the Mississippi State Bar responded to the survey.

**13.** On April 4, 1994, United States District Judge Henry T. Wingate entered an agreed judgment in *Madison County Voter's League v. Runnels,* No. 3:93–CV–092(W)(S) (S.D.Miss. Apr. 4, 1994) awarding Mr. Rhodes, as well as a number of other attorneys, fees at the rate of $160 per hour.

The court observes that this award covered work performed on a case filed in 1993, two years after the case at bar. Further, the court notes that the judgment in *Runnels* is not accompanied by an explanation of the proof, if any, submitted by the parties or of the basis for the award. The judgment reflects only that the award was ordered by agreement of the parties.

**14.** It is notable that a number of the affidavits which plaintiffs supplied in this case to substantiate their claimed range of hourly rates were affidavits that had been filed by the plaintiffs in *Martin v. Mabus.* However, whereas the range of hourly rates identified by those affidavits was from $100 to $200, depending on the number of years of experience, the court in *Martin* awarded significantly lower hourly rates ranging from $75

*Beamon v. City of Ridgeland,* 666 F.Supp. 937 (S.D.Miss.1987) ($60 to $100); *Catchings v. City of Crystal Springs,* 626 F.Supp. 987 (S.D.Miss.1986) ($75).[15] As Judge William H. Barbour aptly observed in *Martin,* "[t]he court has awarded fees in numerous complex civil cases of this nature [and] regularly sees claims in complex civil rights cases in the range of $80.00 to $90.00 from attorneys with more years of experience" than plaintiffs' attorneys. *Martin,* 734 F.Supp. at 1229. The court was and is convinced that the range of rates claimed by plaintiffs is higher than is customarily charged in the community by attorneys with comparable experience and that the rates alleged by defendants, while arguably somewhat low, are far more in keeping with what the court, in its experience, knows to be accurate.

Though the court viewed the range of hourly rates prevailing in the community as lower than represented by plaintiffs, that was only one factor which affected the court's decision as to rates. Another consideration that significantly impacted the court's decision on the amount of attorneys' fees, both as to the time expended and appropriate hourly rates, was plaintiffs' attorneys' lack of effectiveness and lack of success before the court. While the court did conclude that plaintiffs had "prevailed" in the case, the court made it clear that this was a close call and that had the case proceeded to a judicial resolution, plaintiffs could not have expected to "secure a court-ordered plan that satisfied their agenda." *Watkins,* 807 F.Supp. at 411. The conclusion that plaintiffs "prevailed" entitled them to an award of attorneys' fees, but as the court hinted in its earlier opinion, the success claimed by plaintiffs was not due to the merit of their position or the skill or expertise of their attorneys.

As this court previously observed, all parties to this litigation recognized from the outset that the state's legislative districts were unconstitutionally malapportioned and that reapportionment was inevitable.[16] What was at issue between the parties was (1) what reapportionment plan would be adopted, and (2) whether elections would proceed prior to adoption of redistricting plans. As these issues were presented to the court, practically every motion made or position espoused by plaintiffs was rejected. Over plaintiffs' objection, the court allowed elections to proceed, and the court made it known that it did not accept plaintiffs' position on issues pertaining to the actual redistricting process. Plaintiffs well knew, or certainly should have realized that they would not fare well if the decision on redistricting was left to this court and indeed, plaintiffs "prevailed" in the end only because the Mississippi legislature succumbed to their demands. As the court has said before, they "were not successful in securing relief from this court." *Id.* Indeed, only through negotiation, and defendants' extraordinary concessions were plaintiffs able to claim victory in this case.

With these remarks having been made, the court would make the following specific comments about the hourly rates awarded each of the attorneys.

### Carroll Rhodes

▮ Mr. Rhodes was plaintiffs' lead counsel and performed the predominant share of the work for plaintiffs in this case. He requested an award of $160 per hour, even though his affidavit reflected that his hourly rate during the years which encompassed

---

to $105. With particular reference to Mr. Rhodes, who was plaintiffs' lead counsel in *Martin,* the court refused to award his requested rate of $150, stating that it was "aware of no attorney in this market receiving $150 per hour." *Martin,* 734 F.Supp. at 1229. Instead, the court awarded the then prevailing hourly rate for attorneys with Mr. Rhodes' experience, $105. *Id.*

**15.** Most recently, in January of this year, Judge William H. Barbour awarded an hourly rate of $150 to a local attorney. *See Bell v. City of*

*Jackson,* No. 3:92cv009(B) (S.D.Miss.1994). However, the defendant in *Bell* did not contest the award and in fact, did not even respond to the request for fees.

**16.** Thus, even though plaintiffs characterize their fee as "contingent," it was virtually certain that some relief would be granted. In this vein, the court would also note that there is no credible suggestion that plaintiffs' attorneys found this case "undesirable."

this case was $150.[17] At the time of his participation in this case, Mr. Rhodes had approximately 13 years' experience practicing law, during which he was involved in a number of civil rights and voting rights cases. As a result of his experience, Mr. Rhodes has undoubtedly attained a level of expertise in this area. It is also likely that this case imposed demands on his time. Despite these facts, the court remains of the opinion that the $160 hourly rate he requested is excessive. First, as the court has already indicated, this rate is not in line with awards in similar cases and in the court's opinion, exceeds hourly rates that are customarily charged in this area by attorneys with experience comparable to that of Mr. Rhodes. Moreover, while the court does not doubt Mr. Rhodes' expertise in voting rights law, his expertise was not evidenced in his presentation of this case. Despite plaintiffs' ultimate success, their positions, on the whole, lacked merit.[18]

### Wilbur Colom

■ As with Mr. Rhodes, the court is of the opinion that its original award of $95 an hour for Mr. Colom was reasonable under the circumstances and should stand. Mr. Colom's affidavit reflects that he has been a practicing attorney since 1977, but there is nothing in his submission to indicate that he had any experience or expertise in voting rights litigation.[19] In fact, no information is provided as to the nature of his practice (i.e., experience), or any expertise he might have in voting rights issues. Moreover, he does not suggest that the case imposed any undue demands on him or his practice. In fact, his time sheets reflect that he was only involved in this case for a month, with the exception of minimal time expended later in connection

with his submission of his attorney's fee request.

### Deborah McDonald

■ Ms. McDonald graduated from law school in 1982, and thereafter became employed with Southwest Mississippi Legal Services as a staff attorney. She eventually became a managing attorney, and ultimately executive director of Southwest Mississippi Legal Services, a position she held when she left Legal Services to enter private practice in October 1991. During her legal career, Ms. McDonald has been involved in a number of civil rights cases, including voting rights cases, and in this case, she performed a significant share of the work.

In the brief submitted in support of plaintiffs' request for attorneys' fees, demand was made for compensation of Ms. McDonald at the hourly rate of $135. However, as indicated *supra*, in her original affidavit and a supplemental affidavit submitted prior to the court's ruling on the attorneys' fee motion, while Ms. McDonald described her education and work experience, she did not, and to date has not advised the court what she customarily charged or what her normal hourly rate was. She has not informed the court of any fee awards she may have received in other litigation, nor has she even provided any statement as to what she considers would be an appropriate hourly rate for her services in this case.

The court concluded originally, and remains of the opinion that Ms. McDonald should receive attorney's fee compensation based on an hourly rate of $95. With the exception of Mr. Rhodes, Ms. McDonald performed more work in this case than plaintiffs' other attorneys. However, unlike Mr. Rhodes, she does not assert that the case posed any undue demands on her or her

---

**17.** Actually, plaintiffs requested a 50% enhancement of the hourly rate for each of their attorneys, including Mr. Rhodes.

**18.** The court would take this opportunity to note that Mr. Rhodes' time submissions, unlike most of the other attorneys in this case, were of doubtful accuracy. For example, Mr. Rhodes' submissions reflected that he had on a number of occasions worked on the case more than 24 hours a day. *See Watkins,* 807 F.Supp. at 414 n. 12.

**19.** The fact that he was lead counsel in *Islamic Center of Mississippi v. Starkville,* 876 F.2d 465 (5th Cir.1989), suggests that he has some experience in civil rights cases, but plaintiffs have presented no proof that he has experience or expertise in voting rights cases. That is not to say that he does not have experience or expertise. That is simply to say that there has been presented no proof to that effect.

practice.[20] Further, Ms. McDonald had less than ten years' experience practicing law when she began working on this case, which suggests that her services should command a lower hourly rate than Mr. Rhodes, and one that is more in line with what is customarily charged in civil rights cases by attorneys with similar experience.[21]

### John L. Walker

■ Mr. Walker requested that he be awarded for his services in this case an hourly rate "in the range of $130–$160," and stated that in 1980, he had received an award of an attorney's fee in a civil rights case of $100.00 for work performed from 1973–1977. Mr. Walker did not state that he customarily or normally charged between $130 and $160 per hour for his services but rather merely provided his "opinion" that this represented a reasonable range of rates for the work he performed in this case. The court determined that he should receive $110 per hour.[22] At the time of his participation as counsel in this case, Mr. Walker had been licensed to practice law in Mississippi for nearly twenty years and that fact alone justified his receiving a higher hourly rate than was awarded most of plaintiffs' other attorneys. However, the court concluded that an award at the hourly rate suggested by Mr. Walker was not warranted for a number of reasons. Mr. Walker's submission reflected that he has experience in civil rights cases, though it disclosed no particular expertise in voting rights cases. Moreover, no contention was made that this case imposed any undue demands on him or his practice. As with Mr. Colom, he first became involved in the case July 14, 1991, a week before the hearing on plaintiffs' motion for temporary restraining order, and his participation ended less than a month later. Thus, the court concluded, and remains of the opinion that $110 was a reasonable hourly rate, even though that rate

fell below what Mr. Walker considered a reasonable range of rates for his work.

### Johnny Parker

■ Mr. Parker completed his legal education in 1987, when he was awarded his masters of law degree. Over the next several years, he was employed as an associate professor at various law schools, where he taught courses in torts, civil rights, secured transactions and business associations. In 1991, Mr. Parker became a "consultant" to the Owens Law Firm and in that capacity, performed services in connection with this case. In his affidavit, Mr. Parker did not represent that his customary hourly rate or normal billing rate is $135, or any other amount. He merely provided a copy of his resume, a listing of the services performed in this litigation and the time expended in the performance of those services, along with a statement that he "rendered valuable legal services" in this case. As the foregoing illustrates, prior to his participation in this case, Mr. Parker had never represented a client, and there is thus no suggestion that he had an established billing rate for clients. Nor is there any indication that he has a set fee for his "consulting" services. Consequently, in concluding that Mr. Parker's services should be compensated at the rate of $95 per hour, the court did not award him less than his normal hourly rate. It merely considered that in light of Mr. Parker's experience, $95 was a reasonable hourly rate. Mr. Parker did not complete his formal legal education and actually begin work in the legal field until 1987, barely four years before he performed his work in this case. During his few years as an academician, he taught some courses in civil rights, but nothing in the documentation provided to the court hints of any expertise in voting rights or civil rights litigation.[23] Under these circumstances, the

**20.** It appears that at the time she performed most of her work in this case, Ms. McDonald was still employed by Southwest Mississippi Legal Services.

**21.** The court would note, too, that particularly with respect to Mr. Rhodes and Ms. McDonald, there was likely duplication of effort and excessive time claimed for which the court failed to

account in computing compensable hours. *See infra* p. 553.

**22.** The court notes that this figure was higher than the rate he had received in the one case he identified in his affidavit.

**23.** And it appears that his professional affiliation with the Owens Law Firm may have been limited

$95 hourly rate for his services was more than reasonable.

### Tomie T. Green

■ Ms. Green was awarded $95 an hour for her limited services in this case, though plaintiffs had requested that she receive $135 an hour. Ms. Green graduated from law school in December 1983. Upon graduation, she entered private practice for approximately a year and a half, after which she clerked for Judge Henry T. Wingate for about a year and a half. She then worked as an assistant district attorney for another year and a few months. In October 1988, she became an associate with the law firm of Walker & Walker and in January 1991, became a partner in that firm. Ms. Green did not include in her affidavit any representation of her customary hourly rate. She stated simply that she had "rendered ... good and valuable legal services on behalf of plaintiffs." At the time of her work in this case, Ms. Green had been engaged in the practice of law for about six years. Moreover, there is no contention that she had any experience or expertise in voting rights cases, and her services in this case were exceedingly limited in scope.[24] For those services, Ms. Green was well compensated at $95 an hour.

### SUMMARY ON HOURLY RATES

In addressing plaintiffs' attorneys' request for an enhancement of their hourly rates for the "exceptional level of success they attained," the court in its earlier opinion, while noting that plaintiffs' "level of success in their efforts before the court was quite low," *Watkins*, 807 F.Supp. at 417 n. 22, stated that it had attributed their ultimate success to the "time expended toward achieving their goal," and further explained that it had "accounted for their success in the computation of hours" for which compensation would be allowed, *id.* at 417. However, the court was most conservative in excising portions of the attorneys' fees claimed (i.e., hours claimed) that were considered unreasonable, excessive, duplicative, or otherwise not compensa-

ble. Indeed, the court specifically indicated that with respect to questions of duplication of effort and/or excessive number of hours, its estimates were "conservative," and that doubts had been resolved in plaintiffs' favor. *Watkins*, 807 F.Supp. at 414 n. 15. In *many* instances, the court afforded plaintiffs' attorneys the benefit of the doubt and allowed compensation for time that was of questionable compensability. Moreover, the court was confronted with a number of dubious time submissions. *See Watkins*, 807 F.Supp. at 414 n. 12. To some extent, perhaps, the court's decision to award lower hourly rates than had been requested was a function of the court's inability to ascertain with confidence the number of hours which the attorneys actually and reasonably worked on compensable services, without duplication of effort. There is no doubt but that had it determined to award the hourly rates that were being sought, the court would have been far more meticulous in scrutinizing the time submissions and without question, would have been less willing to resolve these doubts in plaintiffs' favor.

■ The court would also observe that even had it awarded the full hourly rates requested and deducted no more time than it did, the court would likely have reduced the overall award on the basis that it was excessive in light of the facts that have already been discussed. The lodestar is *presumptively* reasonable, but not necessarily so, and the court may "adjust" the lodestar if an adjustment is warranted. *See Leroy*, 831 F.2d at 583 n. 11. The court's goal was to ascertain an overall fee award that was reasonable, and which would reasonably compensate plaintiffs' attorneys for their services. The court was confronted with an attorneys' fee request of over $800,000 for a case, the merits of which were resolved within a year of the date it was filed, and during the pendency of which plaintiffs were unsuccessful at every turn. It was a case in which all parties knew from the beginning that some relief would be granted, and in which plain-

---

to this case. Indeed, his resume lists this case as the only "significant" brief or litigation in which he has ever been involved.

**24.** All she did in the case was perform a few hours of legal research on a very narrow issue.

tiffs were able to claim success only because the defendants capitulated in the end to plaintiffs' demands in order to end the litigation. The amount of attorneys' fees plaintiffs had demanded, even without the request for a fifty percent enhancement, was *grossly* excessive. Given all of the general and specific factors discussed *supra*, the court remains of the view that the $188,506.55 figure the court determined to award constitutes adequate compensation. Further, the court is convinced that the hourly rates awarded, even though lower than the rates requested, are justified.

### ATTORNEYS' FEES FOR WORK ON APPEAL

Plaintiffs have moved for an award of attorneys' fees of nearly $90,000 for work performed by Mr. Rhodes and Ms. McDonald on the appeal of the attorneys' fee issues, arguing that they prevailed on "significant issues" on appeal. Mr. Rhodes requests compensation of $64,513.75 (368.65 hours at $175 per hour), and Ms. McDonald asks that she be awarded $23,280 (145.5 hours at $160 per hour), for a total of $87,793.75. In the court's opinion, there exists no reasonable basis whatsoever for an award of this magnitude.

 Fees are requested for work performed both on plaintiffs' appeal to the Supreme Court and their appeal to the Fifth Circuit. Though they maintain that compensation is due for their appellate work before the Supreme Court, there is no sense in which they can be said to have prevailed on their Supreme Court appeal, which was dismissed for want of jurisdiction.[25] Nor, in the court's opinion, did plaintiffs "prevail" on their Fifth Circuit appeal.

Plaintiffs argued on their appeal to the Fifth Circuit that this court (1) erred in failing to conduct an evidentiary hearing, (2) abused its discretion in awarding an unreasonably low attorneys' fee given the exceptional results obtained, (3) erred in its "subsidiary factual determination" that the hourly rates awarded were reasonable, (4) erred in finding that counsels' reported tasks were duplicative and unrelated to the litigation, and that their expenses and costs were excessive, (5) erred in failing to award a premium fee or in having reduced the lodestar, and finally, (6) abused its discretion in not awarding interest on attorneys' fees and litigation expenses. The only claims by plaintiffs which were not rejected outright by the Fifth Circuit were their claims relating to hourly rates and interest. The Fifth Circuit, in all other respects, "agreed with [this] court." *Watkins*, 7 F.3d at 460. However, even on the hourly rates and interest issues, plaintiffs did not prevail.

Regarding hourly rates, the Fifth Circuit merely remanded the case for this court to either award the claimed hourly rates or alternatively, state the reasons for doing otherwise. On the interest issue, plaintiffs had demanded of this court and were entitled to an award of interest on their attorneys' fee award. This court, however, failed to specifically provide for interest in its judgment. Rather than attempting to remedy this omission by the simple expedient of moving this court to correct its judgment, plaintiffs chose instead to include the issue in their appeal.

The court did not refuse to award interest and indeed, plaintiffs did not contend on appeal that it did.[26] And the defendants did

---

**25.** Plaintiffs claim they won on their appeal to the Supreme Court because they argued that the Court lacked jurisdiction over decisions on attorneys' fees. Plaintiffs obviously were uncertain whether the Fifth Circuit would have jurisdiction over the appeal of the attorneys' fees issues, or whether the appeal was instead properly brought in the Supreme Court. Nevertheless, they filed an appeal to the Supreme Court, with complete briefing, in which they argued that the Court had jurisdiction, although they did request, alternatively, that the Court treat their jurisdictional statement as a petition for writ of certiorari in

the event the Court were to conclude that it lacked jurisdiction. The Court explicitly rejected their contention that jurisdiction was proper in that forum, and implicitly rejected their alternative request.

**26.** They argued only that "the district court's attorney fees Order, Judgment, and Amended Judgment [were] all silent as to any interest," and pointed out that they were entitled to such interest from the date of this court's October 29, 1992 attorneys' fees order.

not challenge their entitlement to interest.[27] The Fifth Circuit thus instructed this court, on remand, "to include post-judgment interest on its award of attorneys' fees, beginning from the date of the court's initial order awarding attorneys' fees." *Id.* In the court's view, it would hardly be reasonable to conclude that plaintiffs "prevailed" on their appeal so as to entitle them to an award of attorneys' fees when the only issue as to which they secured relief was one that was not even the subject of an adverse ruling by the district court and which was not contested by the defendants.

In addition to their request for fees for work on their own appeal, plaintiffs seek attorneys' fee compensation for time expended on the defense of defendants' cross-appeal. Essentially, that appeal challenged this court's determination that plaintiffs were the prevailing party in this case for purposes of an attorneys' fee award and challenged the fee award as excessive. Defendants lost on these issues. Defendants now do not vigorously dispute plaintiffs' entitlement to an award of fees for plaintiffs' attorneys' time spent defending the cross-appeal, and in the court's opinion, they are entitled to an award of fees for that work.

The court has reviewed Mr. Rhodes' time submissions, and finds that from the time that defendants filed the cross-appeal until the time the Fifth Circuit ruled on the appeals, Mr. Rhodes spent a total of 79.25 hours working on the case. While he should be compensated for a portion of this time, the court cannot agree that an award should cover all of this time since the work performed by Mr. Rhodes in this time period related not only to defending the cross-appeal but also to rebutting defendants' arguments on plaintiffs' own appeal. The court concludes, therefore, that compensation should be awarded for half the time claimed, or 39.63 hours.

Ms. McDonald's submission reflects that she spent 25.5 hours on the case during this same time frame. Even though Ms. McDonald's submission, unlike that of Mr. Rhodes, specifically identifies most of this time as having been expended on the cross-appeal, the court is of the opinion that the time claimed is excessive in light of the nature of the work required. Fifteen of the 25.5 hours claimed by Ms. McDonald were spent reviewing the record for the cross-appeal. That amount is excessive given that plaintiffs had initiated the appeals process and should have been thoroughly familiar with the record. The court concludes that half of the time claimed should be disallowed and that Ms. McDonald should be awarded fees for 12.75 hours.

Having determined the number of hours for which compensation should be awarded to Mr. Rhodes and Ms. McDonald, the court is again confronted with the task of setting a reasonable hourly rate for their work. Mr. Rhodes has requested $175 an hour, and Ms. McDonald has requested an hourly fee of $160. For the reasons expressed previously in this memorandum with respect to hourly rates, both of these requests are inordinately high. But they are excessive for yet another reason. Even given that voting rights litigation can be complex and demanding, the appeal was not addressed to any substantive or complex voting rights issues but was instead devoted to the issue of attorneys' fees. In view of this fact, the court concludes that Ms. McDonald should receive a fee based on an hourly rate of $100 an hour, and that Mr. Rhodes' services should be compensated at the rate of $115 an hour.[28]

In light of the foregoing, the court concludes that Mr. Rhodes and Ms. McDonald are entitled to awards in the amounts of $4557.45, and $1275.00, respectively.

## COSTS AND EXPENSES ON APPEAL

Finally, Mr. Rhodes requests an award of expenses and costs associated with the appeal and with the motion for attorneys'

---

**27.** The State expressed to the Fifth Circuit its "view that as a matter of law interest is allowed from the date of judgment regardless of whether the judgment references interest."

**28.** Though these rates are higher than the court concluded was reasonable for their earlier work, over two years have passed since that work was performed and an increase is thus in order.

fees on appeal. Mr. Rhodes advises that the Fifth Circuit has already awarded him $613.50 in brief printing costs and $100.00 for filing fees. He now asks of this court that he be awarded an additional $100.00 in filing fees, since he was required to pay the filing fee twice, once when he appealed this court's October 29, 1992 order and again, when he appealed the court's final judgment entered in March 1993. He is not entitled to reimbursement for the filing fee caused by plaintiffs' mistake in appealing prematurely (i.e., prior to the court's entry of judgment). Mr. Rhodes asks, also, for an award of $5.00 for the filing fee paid for plaintiffs' appeal to the Supreme Court. He did not prevail on that appeal and is not entitled to the fee. Finally, he asks for $70.00 for copies made of the motion for attorneys' fees on appeal. This item is properly compensable and should be allowed.

## CONCLUSION

A separate judgment incorporating the court's conclusions herein will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

ORDERED.